# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

REPUBLIC TOBACCO, L.P.,               )
                                      )
             Plaintiff,         )    Case No. 08 CV 3267
                                      )
    v.                                )    Honorable Rebecca R. Pallmeyer
                                      )
COMMONWEALTH BRANDS, INC.,            )    Magistrate Judge Martin C. Ashman
                                      )
             Defendant.        )


## ANSWER, GROUNDS OF DEFENSE AND COUNTERCLAIM
## OF COMMONWEALTH BRANDS, INC.

Defendant Commonwealth Brands, Inc., answers the Complaint as follows:

## PARTIES

1.    Plaintiff Republic Tobacco, L.P. ("Republic Tobacco") is an Illinois limited partnership that distributes roll-your-own cigarette papers, tobacco and other tobacco-related products, including those sold under the TOP, JOB and other leading brand names. Republic Tobacco has its principal place of business at 2301 Ravine Way, Glenview, Illinois. In 1983, Republic Tobacco became successor-in-interest to Adams Apple Distributing Co., as the importer and distributor of JOB cigarette papers, including its "1.5" and "1.25" cigarette papers.

ANSWER:

 Defendant admits the allegations in paragraph 1 except it denies knowledge or information sufficient to form a belief about whether Republic Tobacco became successor-in-interest to Adams Apple Distributing Co., as the importer and distributor of JOB cigarette papers and deny that JOB has "1.5" and "1.25" cigarette papers.

2.      Defendant Commonwealth Brands, Inc. ("CBI') is, on information and belief, a Kentucky

corporation with its headquarters at 900 Church Street, Bowling Green, Kentucky. CBI is

the wholly-owned subsidiary of Imperial Tobacco Group plc, ("Imperial"). According to

its website, Imperial "is the world's fourth largest international tobacco company, which

manufactures, markets and sells a comprehensive range of cigarettes, tobaccos, rolling

papers and tubes." Previously, in 1997, Imperial had bought Robert Burton Associates,

Ltd. ("RBA"), the U.S. distributor of "JOKER" and "E-Z Wider" brand cigarette papers.

In April 2007 Imperial completed its acquisition of CBI which at the time was the fourth

largest cigarette manufacturer in the United States. Following the acquisition, Imperial

made CBI the successor-in-interest to RBA, and CBI took over RBA's right to import and

distribute "JOKER" and "E-Z Wider" brand roll-your-own cigarette paper.

ANSWER:

 Defendant admits the allegations in paragraph 1, except it denies that Imperial made CBI the

"successor-in-interest to RBA".  CBI further states that the Website speaks for itself and any

characterization inconsistent with contents of the website is denied.

3.      This Complaint is filed to enforce an earlier agreement dated November 2, 1979 (the

"979 Settlement Agreement"), in which the parties agreed to certain terms in return for

which Republic agreed to stipulate to the dismissal of its pending case against REA,

CBI's predecessor-in-interest. A copy of the 1979 Settlement Agreement is attached

hereto as Exhibit A.

ANSWER:

Defendant has not been able to obtain a copy of the purported 1979 Settlement Agreement from Robert Burton Associates, the party to that agreement. Upon information and belief, Robert Burton Associates does not have an original counterpart copy of any document memorializing the terms of the 30 year old settlement agreement. Consequently, Defendant lacks sufficient knowledge or information to admit or deny that Exhibit A is an accurate copy of the agreement that resolved the 1979 litigation. Defendant admits that Plaintiff states that it is bringing this lawsuit to enforce an earlier agreement.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction under 28 U.S.C. § 1332, as this dispute arises between citizens of different states. This Court also has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b), as it involves violation of and a request for relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

ANSWER:

Denies that the Complaint sets forth a basis for diversity jurisdiction but admits that this Court has subject-matter jurisdiction over the putative claims under the Lanham Act.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

ANSWER:

Admits.

FACTUAL ALLEGATIONS

6.      For over 30 years, Republic Tobacco and its predecessor, Adams Apple Distributing Co.

(collectively hereinafter "Republic") have had the exclusive right to distribute JOB

cigarette papers in the United States. Over that period of time, Republic has used the

decimal designations "1.5" and "1.25" to identify two of its best-selling and well-known

types of JOB cigarette papers.

ANSWER:

 Defendant lacks knowledge or information sufficient to form a belief as to whether or not

Adams Apple is the predecessor of Republic Tobacco and lacks knowledge or information

sufficient to form a belief about Plaintiff's and Adams Apple's rights to distribute JOB cigarette

papers in the United States for over thirty years.  The remaining allegations are denied.

7.      In 1977, Republic filed an action against RBA, CBI's predecessor-in-interest, captioned

*Adams Apple Distributing Co. v. Robert Burton Associates, Ltd,* No. 77 C 1486 (N.D. Ill.)

(the "1977 Litigation"). The 1977 Litigation sought, *inter alia*, injunctive relief to halt

RBA's unlawful infringement of Republic's common-law "One-and-a-half" and "1-1/2"

marks and to prevent consumer confusion. During the litigation, RBA took the position

that the "One- and-a-half" or "1-1/2" designations were merely "descriptive," and were

not exclusively identified with cigarette papers sold by Republic.

ANSWER:

 Defendant admits that in 1977 Adams Apple Distributing Co. filed an action against Robert

Burton Associates, Ltd., captioned *Adams Apple Distributing Co. v. Robert Burton Associates*

*Ltd.*, No. 77 C 1486 (N.D. Ill.) and admits that Robert Burton Associates Ltd. took, and takes, the

position that the "one-and-a-half" or "1-1/2" designations, as well as other numerical

designations, including the numerical designations alleged to be Plaintiff's marks in its

Complaint, are merely descriptive or generic and are not exclusively identified with rolling

papers sold by Republic or any other company.  The remaining allegations are denied.

8.      The parties settled the 1977 Litigation in 1979.  They agreed that so long as the fractional

designations "1- 1/2 size" or "1-1/4 size" were used in "reasonable proximity" to one of

RBA's brand names, trademarks or logos, such use would be acceptable. Thus, the 1979

Settlement Agreement provides:

> Robert Burton agrees that henceforth all of Robert Burton's cigarette rolling paper
> packaging, advertising and promotional materials which contain the term "1-1/2
> Size" will also include, in reasonable proximity thereto, a separate brand name,
> trademark, or logo, such for example as "E-Z Wider" or "Joker" to the end that the
> name or brand name of Robert Burton's cigarette rolling paper shall not appear to
> be solely and only "1-1/2 Size.".

A similar provision governs the use of "1-1/4 size." Ex. A, ¶¶ 1,2.

ANSWER:

 Defendant admits that the 1977 lawsuit between Adams Apple Distributing Co. and Robert

Burton Associates, Ltd. was settled in 1979.  CBI further states that it is not a party to the alleged

1979 Settlement Agreement.  If Exhibit A is a true and accurate copy of the alleged 1979

Settlement Agreement, that document speaks for itself, and any characterization inconsistent

with contents of the document is denied.

9.      In return, RBA agreed that the "1.5" and "1.25" marks used by Republic belonged solely

to Republic. Thus, the 1979 Settlement Agreement provides that:

> [RBA] agrees that it will not make any proprietary use of the designations "ONE
> POINT FIVE," "1 POINT 5," "ONE POINT TWO FIVE," "1 POINT 25," "ONE
> POINT FIVE size," "1 POINT 5 size," "ONE POINT TWO FIVE size," "1

POINT 25 size "1.5," "1.25," "1.5 size" or "1.25 size" on any packaging, advertising or promotional materials for its cigarette rolling papers.

1979 Settlement Agreement, Ex. A, ¶ 3.

ANSWER:

 Defendant specifically denies that RBA "agreed that the '1.5' and '1.25' marks used by Republic belonged solely to Republic."  CBI further states that it is not a party to the alleged 1979 Settlement Agreement.  If Exhibit A is a true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for itself, and any characterization inconsistent with contents of the document is denied.

10.    Furthermore, RBA agreed that it would not oppose:

> ... any presently pending applications by Adams Apple to register the trademarks "ONE POINT FIVE," "1 POINT 5," "1.5" and/or "ONE POINT TWO FIVE" "1 POINT 25," OR "1.25" for cigarette rolling papers, nor file any cancellation proceedings against such trademarks if same are registered by any  competent governmental authority as the result of Adams Apple's presently pending applications.

*Id*. 14.

ANSWER:

 Defendant denies that it is a party to the alleged 1979 Settlement Agreement.  If Exhibit A is a true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for itself, and any characterization inconsistent with contents of the document is denied.

11.    On this basis, the parties stipulated to dismissal of the action "with prejudice and without the assessment of any costs or damages to any party," and agreed to refrain from any further litigation of the issues.

ANSWER:

 Defendant denies that it is a party to the alleged 1979 Settlement Agreement.  If Exhibit A is a

true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for

itself, and any characterization inconsistent with contents of the document is denied.

12.     Over the next 29 years, in reliance upon the 1979 Settlement Agreement, Republic

        extensively promoted and developed its line of " 1.5,"  "1.25" and, beginning in 1985,

        "1.0" cigarette papers. Through hard work, the investment of time and money and

        through the marketing of a unique paper, used exclusively in the market with decimal

        designations, the "1.5" and "1.25" brands grew over the next thirty years to be among the

        top brands sold in the United States.

ANSWER:

 Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's reliance.

The remaining allegations are denied.

13.     In 2001, RBA and Republic had occasion to reaffirm and expand their understanding of

        the 1979 Settlement Agreement. In a December 12,2001 letter, Republic wrote to RBA

        regarding "our concerns about the use by some of RBA's salesmen of Republic's

        registered designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco

        products not made by Republic." Ex. B. A follow-up letter, dated December 21, 2001

        records that RBA's president, Russ Mancuso, verbally "acknowledged that Republic is

        the owner of the designations' I .5' and '1.25' in conjunction with cigarette papers and

        tobacco products [and] also agreed to make it clear to [RBA's] sales people that the use of

        the designations '1.5' and '1.25' in conjunction with RBA products must cease ..." Ex. C.

ANSWER:

 Defendant denies that it is a party to the alleged 1979 Settlement Agreement.  The letters alleged in paragraph 13 were not addressed to or authored on behalf of CBI and CBI was not a party to that correspondence.  CBI admits that the letters attached as Exhibits B and C are what they purport to be and states that those documents speak for themselves, and CBI denies any characterization inconsistent with their contents.

14.    RBA followed through on its commitment and sent two memoranda to its sales force regarding "Product Designations '1.5' and '1.25'" and "Follow-up Instructions Product Designations '1.5' and '1.25.'" (Exs. D and E.)

ANSWER:

The memoranda alleged in paragraph 14 were not prepared on behalf of CBI.  CBI admits that the documents attached as Exhibits D and E are what they purport to be and states that those documents speak for themselves, and any characterization of those documents inconsistent with their contents is denied.

15.    In a memorandum distributed to all RBA sales personnel on December 12, 2001 RBA's president wrote:

        SUBJECT: Product Designations "1.5" & "1.25" When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.

        If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. If you have any questions regarding the trademark designations please contact me immediately.

(Ex. D).

ANSWER:

 The memorandum alleged in paragraph 15 was not prepared on behalf of CBI.  CBI admits that

the document attached as Exhibits D is what it purports to be and states that the document speaks

for itself, and any characterization of the document inconsistent with its contents is denied.

16.    In a second memorandum sent to all sales personnel on December 27,2001, RBA

reinforced the message:

> SUBJECT: Follow-up Instructions Product Designations "1.5" & "1.25"
>
> As stated in my previous memo dated December 12,2001, when preparing
> presentations or promotional materials do not use the "1.5" and "1.25"
> designations for our Joker and E-Z Wider cigarette paper products as these are
> registered trademarks used by Republic Tobacco for the cigarette paper and
> tobacco categories. Our Joker and E-Z Wider products should have the 1 ½  and
> 1 ¼ designations signifying the brand sizes.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous
> presentations cease and desist immediately. Again, no one should use the "1.5"
> and "1.25" designations in any presentations for the cigarette paper and tobacco
> categories except Republic Tobacco who owns the registered designations.
>
> If you have any questions regarding the trademark designations please
> contact me immediately.

(Ex.. E.)

ANSWER:

 The memorandum alleged in paragraph 16 was not prepared on behalf of CBI.  CBI admits that

the document attached as Exhibits E is what it purports to be and states that the document speaks

for itself, and any characterization of the document inconsistent with its contents is denied.

17.    Having issued these unequivocal instructions to his sales force, RBA' s president wrote to

Republic on December 27, 2001. The December 27, 2001 letter states in its entirety:

Mr. Don Levin
President
Republic Tobacco
2301 Ravine Way Glenview,
Illinois 60025

Re: Trademark Matters

Dear Mr. Levin:

RBA has received the letter dated December 21, 200 I regarding Trademark Matters and has taken the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen. A memo (copy attached) was sent to all RBA salesmen after our initial contact on December 12,2001 informing them of this. A second memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic is the owner of the" 1.5" and "1.25" designations in conjunction with the cigarette papers and tobacco products and that RBA products utilize the 1 1/4 and 1 1/2 size designations in the cigarette papers and tobacco products category.

I am hopeful that my conversation with Seth Gold and this  letter clearly indicates that RBA does compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. We hope that our two companies can continue to transact business in quiet enjoyment in the market place. Please contact me if you have any further questions.

Very truly yours,

Robert Burton Associates, Ltd.

Russell G. Mancuso

(Ex. F.)

ANSWER:

The letter alleged in paragraph 17 was not addressed to or authored on behalf of CBI, and CBI was not a party to that correspondence.  CBI admits that the letter attached as Exhibit F is what it purports to be and states that the document speaks for itself, and CBI denies any characterization inconsistent with its contents.

18.    In reliance on RBA's prompt remedial action, Republic did not sue RBA in 2001 for

violation of the 1979 Settlement Agreement and infringement of its "1.5" and "1.25

marks.

ANSWER:

Defendant admits that Republic did not sue Robert Burton Associates Ltd. in 2001 and

Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's reliance.

The remaining allegations are denied.

19.    In 2007, CBI succeeded to RBA's rights to import and distribute JOKER and E-Z Wider

       cigarette papers.  Later, at a November 2007 meeting between CBI's owner, Imperial

       Tobacco, and Republic, Imperial sought to buyout Republic. Republic's current owner

       refused to sell, and the unlawful acts complained of herein followed.

ANSWER:

Denies.

20.    Following the unsuccessful attempt to buy Republic, Imperial's subsidiary, CBI violated

       the 1979 Settlement Agreement and the 2001 Letter Agreements. CBI chose to infringe

       upon Republic's well-established "1.5" and "1.25" marks and to engage in unfair

       competition and deceptive trade practices.

ANSWER:

 Denies.

21.    At the National Association of Tobacco Outlets trade show in April 2008, CBI circulated

       a sales advertisement that violates the 1979 Settlement Agreement and the 2001 Letter

       Agreements. A copy or CBI's advertisement is attached as Exhibit G. The advertisement

       infringes Republic's well-established "1.5" and "1.25" marks and constitutes unfair

       competition. It purports to offer a counter display of "1.50" and "1.25" JOKER Papers.

       According to the advertisement:

JOKER PAPERS

* * *

Display Contains:

48 ea Regular Orange

24 ea Single Wide Double

24 ea   1.25

48 ea   1.50

Case Pack is 12 Display per case.

(Ex. G).

ANSWER:

Defendant admits that the advertisement for JOKER rolling papers of various sizes was prepared by and circulated by a sales representative at the April 2008 NATO trade show in Las Vegas, Nevada.  The remaining allegations are denied.

22.     CBI does not deny that it circulated the advertisement at the trade show, but claims that "RBA, and now CBI has taken the position that the [marks, "1.5" and "1.25"] can be used descriptively." (Ex. H.) At the same time, CBI seeks to avoid formal resolution of this question, seeking to palliate Republic by stating "we agree to refrain from the use of these numbers ill this time and assure you that the use in this instance was not intentional" (emphasis added.) Republic strongly disagrees with CBI's attempt to both claim the right to use Republic's marks, while disclaiming its intent to do so "in this instance." Republic brings this action to obtain, *inter alia*, a declaration of its rights versus CBI with respect to the use of marks "1.5" and "1.25" in connection with the marketing and sale of cigarette paper.

ANSWER:

Defendant admits the first sentence of the allegations in paragraph 22 and lacks knowledge or information sufficient to form a belief about Plaintiff's purpose in filing this action. The remaining allegations are denied.


## COUNT I
## Breach Of Thee 1979 Settlement Agreement

23.    Republic has fulfilled all of its responsibilities under the 1979 Settlement Agreement.

ANSWER:

Denies.

24.    CBI has violated the 1979 Settlement Agreement between its predecessor-in- interest, RBA, and Republic.

ANSWER:

Denies.

25.    An actual controversy exists as to the scope of the parties' rights under the 1979 Settlement Agreement and Republic seeks a declaration that pursuant to the 1979 Settlement Agreement, as implemented through the parties' course of conduct and course of performance, CBI may not make use of Republic's well-established "IS' and "1.25" marks for cigarette papers. Republic also seeks damages for any harm arising out of CBI's breach of the 1979 Settlement Agreement.

ANSWER:

Denies.

26.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER

cigarette papers has caused, and unless enjoined by this Court will continue to cause,

irreparable injury and other damages to Republic's business, reputation, good will,

product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

## COUNT II
## Promissory Estoppel

27.    Republic realleges and incorporates by reference the allegations of Paragraphs 1-26 of

this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph

27.

28.    In 2001, CBI's predecessor, RBA, reaffirmed its commitment not to use the designations

"1.5" or "1.25" in connection with its own Joker and E-Z Wider cigarette paper products

"as these are registered by Republic Tobacco for the cigarette paper and tobacco

categories." (Ex. D.)

ANSWER:

Denies.

29.    RBA instructed its own sales personnel to "cease and desist immediately" any use of those designations "in any presentations for cigarette paper and tobacco categories except Republic Tobacco who owns the registered designations." (Ex. E.)

ANSWER:

Denies.

30.    To forestall litigation, RBA advised Republic that it "has taken the appropriate actions to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen," and that, "A second memo ... is being sent to RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and "1.25" designations ... " (Ex. F.)

ANSWER:

The memorandum attached as Exhibit F was not authored by or prepared on behalf of CBI.  CBI admits that Exhibit F is what it purports to be and states that Exhibit F speaks for itself, and any characterization inconsistent with the contents of the documents is denied.

31.    Republic reasonably relied upon these representations. CBI has now renounced its obligation to honor these promises. Republic seeks a judgment declaring its rights and estopping CBI from reneging on the promises made by its predecessor in interest, RBA, and awarding Republic its damages for any harm it has suffered due to CBI's breach.

ANSWER:

Denies

32.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause,

irreparable injury and other damages to Republic's business, reputation, good will,

product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

## COUNT III
## Lanham Act 15 U.S.C. § 1125(a)(1)(A) False
## Designation Of Origin And Federal Trademark Infringement

33.     Republic realleges and incorporates by reference the allegations of Paragraphs 1-32 of

this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph

33.

34.     CBI's use of "1.5" and 1.25" in connection with the JOKER brand of cigarette papers is

without permission or authority of Republic, and is likely to cause confusion, to cause

mistake and/or to deceive.

ANSWER:

Defendant denies that CBI is currently using "1.5" and "1.25", denies that CBI needs authority of

Plaintiff to use the size descriptors "1.5" and "1.25" in connection with rolling papers and denies

that use of the size descriptors is likely to cause confusion, to cause mistake and/or to deceive.

35.     CBI's use of "1.5" and "1.25" in connection with the JOKER brand of cigarette papers

has been made not withstanding Republic's prior rights in the marks "1.5" and "1.25"

papers.

ANSWER:

Defendant admits that CBI used the size descriptors "1.5" and "1.25" in connection with the

JOKER brand of cigarette papers in the advertisement attached to the Complaint as Exhibit G.

CBI denies that Plaintiff has proprietary rights in the size descriptors "1.5" and "1.25" and denies

that they are trademarks.

36.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with the

        JOKER brand of cigarette papers is in violation of Republic's common law rights in the

        "1.5" and "1.25" marks.

ANSWER:

Defendant denies that its use of "1.5" and "1.25" is "continuing", denies that "1.5" and "1.25"

are marks and denies that plaintiff has common law rights in "1.5" and "1.25" which could be

violated.

37.    CBI is infringing Republic's rights to the" 1.5" and "1.25" marks in interstate commerce

        by various acts, including, without limitation, the advertising, offering for sale, sale, and

        distribution of JOKER cigarette papers under the confusingly similar designations "1.5"

        and "1.25."

ANSWER:

Denies.

38.    CBI's use of the designations "1.5" and "1.25" in connection with JOKER brand of

        cigarette papers constitutes false designation of origin, false or misleading description

        and representation of fact which is likely to cause confusion and to cause mistake, and to

deceive as to the affiliation, connection or association of Republic with CBI and as to the origin, sponsorship, or approval of CBI's products and commercial activities by Republic.

ANSWER:

Denies.

39.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damages to Republic's business, reputation, good will, product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

40.    Pursuant to Section 34 of the Lanham Act, 15 U. S. C. § 1116, Republic seeks injunctive relief restraining CBI from using the designations "1.5" and "1.25" in connection with the offering, sale, distribution, advertising, and marketing of any cigarette papers other than those distributed by Republic.

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 40. Defendant denies that Plaintiff is entitled to such relief.

41.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Republic seeks to recover any profits CBI may have received and any damages Republic may have incurred as a result of CBI's unlawful conduct, as well as Republic's litigation costs.

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 41. Defendant denies that Plaintiff is entitled to such relief.

42.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1118, Republic seeks an order requiring CBI to deliver for destruction all advertisements, labels, packages, and other materials bearing or reproducing the marks "1.5" or "1.25"

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 42.  Defendant denies that Plaintiff is entitled to such relief.


## COUNT IV
## Unfair Competition And Trademark Infringement

43.     Republic realleges and incorporates by reference the allegations of Paragraphs 1- 42 of this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph 43.

44.     Through continuous use of the marks "1.5' and" 1.25" in advertising, offering for sale, distribution, marketing, and labeling of cigarette roIling papers, Republic and its predecessors have acquired common law rights to use the marks" 1.5" and "1.25 for such products.

ANSWER:

Denies.

45.    CBI's use of the designations "1.5" and "1.25" are likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of CBI with

Republic, or as to the origin, sponsorship, or approval of CBI's products and commercial

activities by Republic such that CBI's acts constitute infringement of Republic's

protectable proprietary rights in its mark, misappropriation of Republic's goodwill, and

unfair competition under Illinois law, entitling Republic to relief, including, but not

limited to, injunctive relief and damages.

ANSWER:

Denies.

JURY DEMAND

46.    Pursuant to Fed. R. Civ. P. 38(b), Republic respectfully demands a trial by jury of all

issues triable by a jury in this case.

ANSWER:

Admit that Plaintiff demands a trial by jury on all issues so triable.

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE

47.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

48.     There is no subject matter jurisdiction over the diversity claims alleged in Counts 1 and 2 because Plaintiff fails to allege the citizenship of its partners, and it fails to allege an adequate amount in controversy.

THIRD AFFIRMATIVE DEFENSE

49.     The court should decline to exercise its discretionary declaratory judgment jurisdiction over Counts 1 and 2 in the Complaint because there is no privity of contract between Plaintiff and Defendant CBI and the Defendant CBI is not bound by the alleged agreement.

FOURTH AFFIRMATIVE DEFENSE

50.     Plaintiff is not the owner of the alleged marks at issue and lacks standing to bring the claims set forth in the Complaint.

FIFTH AFFIRMATIVE DEFENSE

51.     Plaintiff is not the real party in interest for purposes of Rule 17.

SIXTH AFFIRMATIVE DEFENSE

52.     CBI's use of "1.25" and "1.5" was a fair use to describe the size of its rolling papers.

SEVENTH AFFIRMATIVE DEFENSE

53.     Plaintiff Republic Tobacco is guilty of trademark misuse and/or unclean hands because it has attempted to enforce rights in numerical designations in which it has no rights;  even if it could acquire rights in the numerical designations, its attempt to prevent fair use of

the numerical designations in their descriptive meaning is grossly inequitable misconduct.

EIGHTH AFFIRMATIVE DEFENSE

54.   Plaintiff's alleged marks "1.5" and "1.25" are generic or descriptive size descriptors which are functional and incapable of legal protection under trademark or unfair competition law.

NINTH AFFIRMATIVE DEFENSE

55.   Plaintiff's alleged marks "1.5" and "1.25" are not inherently distinctive and have not acquired secondary meaning.

TENTH AFFIRMATIVE DEFENSE

56.   If Exhibit A is the 1979 Settlement Agreement, and if CBI is bound by it, CBI's conduct was permitted, and thus privileged, pursuant to paragraph 5 of that Agreement and by Plaintiff's predecessor's implied assurance that fair use would not be precluded by the Agreement.

ELEVENTH AFFIRMATIVE DEFENSE

57.   CBI's use of "1.25" and "1.5" to describe the size of its rolling papers in the advertisement at issue was not likely to cause confusion with Plaintiff's alleged marks.

TWELFTH AFFIRMATIVE DEFENSE

58.   Plaintiff has abandoned any rights that it claims to have had in the alleged marks "1.5" and "1.25".

WHEREFORE, Defendant demands judgment in its favor and dismissal of the Plaintiff's claims with prejudice.

## COUNTERCLAIM

1.  This court has subject matter jurisdiction over this counterclaim pursuant to Federal Rule of Civil Procedure 13(a) and 28 U.S.C. § 1367(a).

2.  Commonwealth Brands, Inc. ("CBI") brings this counterclaim pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, because a case of actual controversy within this court's jurisdiction exists which permits this court to declare the rights and legal relations of CBI.

3.  CBI is likely to be damaged by Republic Tobacco, L.P.'s continued assertion in its Complaint, and in the relevant market in interstate commerce in the United States, that it owns the exclusive right to use the numerical designations "1.5" and "1.25" in connection with cigarette papers and has the right to exclude CBI from using those functionally descriptive or generic terms to describe the sizes of its own cigarette papers.

4.  CBI is actually involved in the sale and distribution of cigarette rolling papers, which are products of the same nature of Plaintiff's goods described in the Complaint.

5.  CBI is not a party to the 1979 Settlement Agreement alleged in the Complaint of Plaintiff, Republic Tobacco.

6.  CBI has used the decimal designations "1.5" and "1.25" in interstate commerce in the United States to describe the relative size of its cigarette papers.

7.     CBI has a valid and legal right to describe its cigarette rolling papers by size using the functionally descriptive or generic terms.  Republic improperly claims the exclusive right to use those terms.

8.     The numerical designations "1.5" and "1.25" are functionally descriptive or generic and incapable of becoming marks.

9.     Even if the numerical designations "1.5" and "1.25" are considered merely descriptive, they have not acquired secondary meaning as Plaintiff's marks.  Further, even if the numerical designations had become Plaintiff's marks, any use of the numerical designations by CBI to describe the size of its cigarette papers is a privileged fair use.

10.    Republic has not acquired and can not acquire, any trademark rights in the numerical designations "1.5" and "1.25".

11.    CBI's use of the numerical designations "1.5" and "1.25" in interstate commerce in the United States to describe the relative size of its cigarette papers was a fair use and did not infringe any legally protected rights claimed by the Plaintiff, Republic Tobacco, in its Complaint.

12.    CBI desires to use the decimal designations "1.5" and "1.25" in interstate commerce in the United States, in the future, to describe the relative size of its cigarette papers free from the future claims of trademark infringement, unfair competition and breach of contract asserted by Republic Tobacco.


WHEREFORE, Defendant and Counterclaimant Commonwealth Brands, Inc., prays that:

1)     This Court exercise its jurisdiction under 28 U.S.C. § 2201 to:

(a)     declare that Commonwealth Brands, Inc. has the right to use the numerical

designations "1.25" and "1.5" in the United States to describe the relative sizes of

its cigarette papers;

(b)     declare that the numerical designations "1.25" and "1.5" are functionally

descriptive or generic as used in connection with cigarette papers, or, if merely

descriptive, have not attained secondary meaning and are not protectable under

the trademark laws or, in the alternative, declare that even if the numerical

designations may be protected under the trademark laws, CBI's use of them is a

fair use;

(c)     declare that CBI's use of the decimal designations does not violate the alleged

1979 Settlement Agreement, to which it is not a party;

(d)     this Court award CBI attorneys' fees and costs of this action; and

(e)     grant such other and further relief as it deems just.

                                Respectfully Submitted,

Date:  July 22, 2008                    _____/s/Michael P. Padden/_____
                                Michael P. Padden
                                Howrey LLP
                                321 North Clark Street
                                Suite 3400
                                Chicago, Illinois 60654
                                Tel. (312) 595-1149
                                Fax: (312) 595-2250

                                And

                                Robert E. Scully, Jr.
                                (*pro hac vice* application pending)
                                Brewster B. Taylor
                                (*pro hac vice* application pending)
                                Emily Harwood Smith

(*pro hac vice* application pending)
Stites & Harbsion PLLC
1199 N. Fairfax Street
Suite 900
Alexandria, Virginia 22314
Tel. (703) 739-4900
Fax: (703) 739-9577

Attorneys for Defendant,
Commonwealth Brands, Inc.

## CERTIFICATE OF SERVICE

I, Michael P. Padden, counsel for Defendant Commonwealth Brands, Inc., hereby certify that a copy of the foregoing Answer, Grounds of Defense and Counterclaim of Commonwealth Brands, Inc., was served via electronic mail on this 22nd day of July, 2008 upon each of the following counsel of record:

> Charles Bergen
> Grippo & Elden
> 111 S. Wacker Drive
> Chicago, Illinois 60606
> cbergen@grippoelden.com
>
> Peter S. Roeser
> proeser@grippoelden.com


   /s/  Michael P. Padden        /
Michael P. Padden