**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REPUBLIC TOBACCO, L.P., an Illinois Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 08 CV 3267 |
| v. | ) ) ) | Hon. Pallmeyer |
| COMMONWEALTH BRANDS, INC., a Kentucky Corporation | ) ) ) | Magistrate Judge Ashman |
| Defendant. | ) ) | |

**PLAINTIFF REPUBLIC TOBACCO L.P.'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
TO ENFORCE 1979 SETTLEMENT AGREEMENT**

Plaintiff Republic Tobacco, L.P. ("Republic") seeks summary judgment, pursuant to Federal Rule of Civil Procedure 56(c) on Count I of its Complaint, declaring that defendant Commonwealth Brands, Inc. ("CBI") is in breach of a 1979 Settlement Agreement between its predecessor-in-interest and the predecessor-in-interest of Republic. As discussed below, no genuine issue of material fact exists and as a matter of law, Republic is entitled to summary judgment.

**I.    INTRODUCTION**

Republic's breach of contract claim is ripe for summary judgment. The 1979 Settlement Agreement is a valid and enforceable contract entered into by the parties' predecessors in interest. (*See* Republic Tobacco L.P's Statement of Material Facts in Support of Its Motion for Summary Judgment Pursuant to Local Rule 56.1(a)(3) (hereinafter "SMF") at ¶ 12; Ex. C.) Under the 1979 Settlement Agreement, CBI's predecessor agreed that it would not make any proprietary use of the marks "1.25" or "1.5" on its "packaging, advertising or promotional materials" for cigarette rolling papers. (Ex. C ¶ 3.)

CBI's conduct is also undisputed.  In April 2008, CBI distributed promotional advertising materials for its cigarette papers using the terms "1.25" and "1.5" at a national industry trade show.  (SMF at ¶¶ 34-35, Ex. L.)  Republic now seeks summary judgment declaring that CBI's conduct breached the 1979 Settlement Agreement and ordering CBI to honor the terms of the 1979 Settlement Agreement.

## II.    UNDISPUTED FACTS AND BACKGROUND

### A.    Parties

Republic is an Illinois limited partnership that distributes tobacco and tobacco-related products, including roll-your-own cigarette papers.  (SMF ¶ 1.)  It is the successor-in-interest to Adams Apple Distributing Co., an Illinois corporation.  (SMF ¶ 2.)  Republic now distributes cigarette papers under the JOB name and uses the decimal marks "1.25" and "1.5" in conjunction with the distribution of JOB 1.25 and JOB 1.5 cigarette papers.  (SMF ¶ 3.)

Adams Apple, Republic's predecessor, filed a complaint in federal court against CBI's predecessor, Robert Burton Associates, Ltd. ("RBA"), a New York corporation, in 1977, captioned *Adams Apple Distributing Co. v. Robert Burton Associates, Ltd.*, No. 77 C 1486 (N.D. Ill.) (the "1977 Litigation").  (SMF ¶ 4.)  From the time of the 1977 Litigation until 1997, RBA distributed tobacco-related products, including cigarette papers under the trade names JOKER and E-Z WIDER.  (SMF ¶ 5.)

Imperial Tobacco plc ("Imperial"), a UK limited company, bought RBA in 1997.  (SMF ¶ 6.)  Later, in April 2007, Imperial bought CBI, which has now succeeded RBA as the exclusive distributor of roll-your-own cigarette papers under the JOKER and E-Z WIDER names in the United States.[1]  (SMF ¶ 7.)

---

[1]    In 1997, Imperial bought Robert Burton Associates, Ltd. ("RBA"), the exclusive distributor of JOKER and E-Z WIDER brand cigarette papers in the United States.  (SMF ¶ 8.)  In April 2007, Imperial completed its acquisition of CBI.  In September 2007, RBA was merged into CBI.  CBI became the successor-in-interest to RBA as importer and distributor of JOKER and E-Z WIDER cigarette papers in the United States.  (SMF ¶¶ 9, 10.)

**B.    The 1979 Settlement Agreement.**

The 1977 Litigation sought, among other things, adjudication of the parties' rights to use

the fractional designations "1½" and "1¼" on packaging, advertising or promotional material for

cigarette papers. (SMF ¶ 11.)  In 1979, Adams Apple and RBA entered into a settlement

agreement (the "1979 Settlement Agreement") resolving the 1977 Litigation.  (SMF ¶ 12.)

Under the 1979 Settlement Agreement the parties agreed that RBA could use the fractional

designations "1½" and "1¼" on its packaging, advertising or promotional materials for cigarette

papers so long as the designations were used in reasonable proximity to one of RBA's brand

names, trademarks or logos.  (SMF ¶ 13; Ex. C ¶¶ 1, 2.)  For the last 29 years, RBA and CBI

have enjoyed the benefit of RBA's bargain by using the fractional designations to promote their

products.  (SMF ¶ 14.)

In return, Adams Apple received an agreement from RBA regarding the decimal marks

"1.25" and "1.5."  (SMF ¶ 15; Ex. C ¶ 3.)  The decimal marks, which plainly sound and look

different than the fractional designations, are treated as distinct items under the 1979 Settlement

Agreement.  (SMF ¶ 16; Ex. C.)  In the 1979 Settlement Agreement, RBA promised that it would

not make any proprietary use of the decimal marks on any packaging, advertising, or

promotional materials.  (SMF ¶ 17; Ex. C ¶ 3.)  The 1979 Settlement Agreement provided as

follows with respect to the decimal marks:

> Subject to the provisions of Paragraphs 1 and 2 above, Robert Burton
> [now CBI] agrees that it will not make any proprietary use of the
> designations "ONE POINT FIVE", "1 POINT 5", "ONE POINT TWO
> FIVE", "1 POINT 25", "ONE POINT FIVE size", "1 POINT 5 size",
> "ONE POINT TWO FIVE size", "1.5", "1.25", "1.5 size" or "1.25 size"
> on any packaging, advertising or promotional materials for its cigarette
> rolling papers.

(SMF ¶ 18; Ex. C ¶ 3.)

At the time of the 1979 Settlement Agreement, Republic's predecessor had filed trademark applications for the marks "1.5," "1.25," (both filed in 1977), "One Point Five," "1 Point 5," "One Point Two Five" and "1 Point 25" (filed in 1979). (SMF ¶ 19.) Accordingly, in the 1979 Settlement Agreement, RBA further agreed that it would "not oppose any presently pending applications by Adams Apple to register" these trademarks "nor to file any cancellation proceedings against such trademarks if same are registered . . . as a result of Adams Apple's presently pending applications." (SMF ¶ 20; Ex. C ¶ 4.)

In sum, the parties agreed that either of them could use the fractional designations, but only Republic could use the decimal marks on any packaging, advertising or promotional materials for cigarette rolling papers, and further agreed that RBA would not oppose Adams Apple's pending efforts to register the marks. (SMF ¶ 21; Ex. C ¶¶ 2-3.) After entering into this agreement, Republic spent the next 29 years investing countless hours and $40 million on the promotion and development of its decimal mark products. (SMF ¶ 22.) In 1977, 1.5 and 1.25 were *de minimus* new entrants in the cigarette paper market. (SMF ¶ 23.) Today, they have become two of the top-selling brands of cigarette papers sold in the United States. (SMF ¶ 24.)

### C.    Confirmation In 2001

From 1979 through December 2001, RBA appears to have honored its agreement not to use the decimal marks to promote its cigarette papers. (SMF ¶ 25.) In December 2001, when a dispute arose in connection with a promotional piece being distributed by RBA, Republic and RBA had occasion to affirm their understanding of the 1979 Settlement Agreement. (SMF ¶ 26.) In a December 12, 2001 letter, Republic wrote to RBA regarding Republic's "concerns about the use by some of RBA's salesmen of Republic's registered designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products not made by Republic." (SMF ¶ 27; Ex. H.) A follow-up letter, dated December 21, 2001 records that RBA's president, Russ

Mancuso,[2] "acknowledged that Republic is the owner of the designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products [and] also agreed to make it clear to [RBA's] sales people that the use of the designations '1.5' and '1.25' in conjunction with RBA products must cease..." (SMF ¶ 28; Ex. I.)

Consistent with the 1979 Settlement Agreement and Mancuso's acknowledgement, above, RBA sent two memoranda to its sales force instructing them not to use 1.25 or 1.5 on any of its promotional materials for cigarette papers. (SMF ¶ 29; Exs. K, L.) In a memorandum distributed to all RBA sales personnel on December 12, 2001, RBA wrote:

> SUBJECT: Product Designations "1.5" & "1.25"
>
> When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately.
>
> If you have any questions regarding the trademark designations please contact me immediately.

(SMF ¶ 30; Ex. K.)

In a second memorandum dated December 27, 2001, RBA unequivocally wrote:

> SUBJECT: Follow-up Instructions Product Designations "1.5" & "1.25"
>
> As stated in my previous memo dated December 12, 2001, when preparing presentations or promotional materials do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered trademarks used by Republic Tobacco for the cigarette paper and tobacco categories. Our Joker and E-Z Wider products should have the 1½ and 1¼ designations signifying the brand sizes.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. Again, no one should use the "1.5" and "1.25" designations in any presentations for the cigarette paper

---

[2] Mancuso became an employee of Defendant CBI, following RBA's merger into CBI in 2007.

and tobacco categories except Republic Tobacco who owns the registered
designations.

If you have any questions regarding the trademark designations please
contact me immediately.

(SMF ¶ 31; Ex. L.)

Having issued these instructions to RBA's sales force, RBA wrote to Republic's

Chairman, Don Levin, on December 27, 2001 and reiterated the parties' mutual understanding

that RBA was prohibited under the agreement from using the decimal marks 1.25 or 1.5 in

connection with cigarette papers. RBA, through its president, said:

> Dear Mr. Levin:
>
> RBA has received the letter dated December 21, 2001 regarding
> Trademark Matters and has taken the appropriate action to insure that
> Republic's registered designations "1.5" and "1.25" are not being used by
> mistake in presentations by RBA salesmen. A memo (copy attached) was
> sent to all RBA salesmen after our initial contact on December 12, 2001
> informing them of this. A second memo (copy attached) is being sent to
> the RBA salesmen today, again notifying them that *Republic is the owner
> of the "1.5" and "1.25" designations in conjunction with the cigarette
> papers and tobacco products and that RBA products utilize the 1½ and
> 1¼ size designations in the cigarette papers and tobacco products
> category*.
>
> I am hopeful that my conversation with Seth Gold and this letter clearly
> indicates that RBA does compete in a clean and fair manner with respect
> for the law and the proprietary rights of our respective companies. We
> hope that our two companies can continue to transact business in quiet
> enjoyment in the market place.
>
> Please contact me if you have any further questions.
>
> Very truly yours,
>
> **RBA Associates, Ltd.**
>
> Russell G. Mancuso

(SMF ¶ 32; Ex. J) (emphasis added.)

In light of RBA's prompt remedial action, Republic did not sue RBA in 2001 for its

violation of the 1979 Settlement Agreement. (SMF ¶ 33.)

**D.    CBI's Breach of the 1979 Settlement Agreement**

In April 2008, CBI circulated a sales advertisement at the National Association of Tobacco Outlets trade show.  (SMF ¶ 32; Ex. M.)  The advertisement uses the decimal designations 1.25 and 1.5 on CBI's promotional materials for its JOKER cigarette rolling papers. *Id.*  According to the advertisement:

> JOKER PAPERS
>
> *       *       *
>
> Display Contains:
> 48 ea    Regular Orange
> 24 ea    Single Wide Double
> 24 ea    1.25
> 48 ea    1.50
> Case Pack is 12 Display per case.

(SMF ¶ 35; Ex. M.)

It is undisputed that CBI circulated the above advertisement at the trade show; that CBI used the 1.25 and 1.5 decimal marks in a promotional advertising context; and that the advertisement relates to CBI's JOKER cigarette papers.  (SMF ¶¶ 34-35; Ex. M.)  Republic again contacted RBA's successor, and told them to stop, immediately and unequivocally.  But unlike its predecessor's response in 2001, CBI said only that it would refrain from using the decimal marks "at this time" and "in this instance."  But it also asserted that "RBA, and now CBI has taken the position that the [marks 1.25 and 1.5] can be used descriptively."  (SMF ¶ 36; Ex. N.)  Unlike RBA's improper use of the decimal marks in 2001, which was resolved without litigation, CBI now asserts that it has the right to use the "1.25" and "1.5" on the packaging, advertising and promotional materials for its cigarette papers.  (*Id.*)

Therefore, Republic moves this Court for summary judgment to obtain a declaration of its rights versus CBI with respect to the use of marks "1.25" and "1.5" in connection with the marketing and sale of cigarette paper.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is "particularly appropriate in cases involving the interpretation of written contracts." *Tingstol Co. v. Rainbow Sales, Inc.*, 218 F.3d 770, 772 (7th Cir. 2000); *Am. Nat. Bank and Trust. Co. of Chicago v. Allmerica Fin. Life Ins. And Annuity Co.*, 304 F. Supp. 2d 1009, 1018 (N.D. Ill. 2003) (granting summary judgment on contract claim); *McDonald's Corp. v. C.B. Mgmt. Co., Inc.*, 13 F. Supp. 2d 705 (N.D. Ill. 1998) (same). To avoid summary judgment, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.' Fed R. Civ. P. 56(e) (emphasis added)." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). A mere "scintilla" of evidence is not sufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995) (courts will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question").

## IV.    ARGUMENT

To establish a breach of contract claim under Illinois law, the plaintiff must demonstrate, the existence of a valid and enforceable contract, plaintiff's performance, a breach of the contract by the opposing party and damage resulting from that breach. *See, e.g., Trade Fin. Partners, LLC v. AAR Corp.*, No. 06 C 3466, 2008 WL 904885, at *5 (N.D. Ill. March 31, 2008) (Pallmeyer, J.); *T.L. Swint Indus., Inc. v. Premiere Sales Group, Inc.*, 16 F. Supp. 2d 937, 939 (N.D. Ill. 1998) (summary judgment for plaintiff on breach of sales consulting agreement where it was undisputed that defendant had failed to make payments required by the agreement); *Tibor Mach. Prods., Inc. v. Freudenberg-Nok Gen. P'ship*, 967 F. Supp. 1006, 1011 (N.D. Ill. 1997);

*Green v. Trinity Intern. Univ.*, 344 Ill. App. 3d 1079, 1085 (2003) (identifying the elements for breach of contract claim under Illinois law).

The 1979 Settlement Agreement is a valid and enforceable contract. *See Air Line Stewards and Stewardesses Assoc., Local 550, TWU, AFL-CIO v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983) (treating settlement agreements as a contract). The agreement was supported by consideration and signed by all of the parties. Both parties again acknowledged the validity of the contract by affirming their understanding of the 1979 Settlement Agreement in communications in 2001.

CBI plainly breached the 1979 Settlement Agreement. *See, Transp. & Transit Assocs., Inc. v. Morrison Knudsen Corp.*, No. 98 C 2827, 1999 WL 116229, *3 (N.D. Ill. Feb. 26, 1999) (granting summary judgment based upon the "natural and ordinary meaning" of terms in contract). The unambiguous terms of the 1979 Settlement Agreement plainly prohibit RBA and its successors from making *any* proprietary use of the decimal marks "1.25" or "1.5" on any packaging, advertising, or promotional materials for cigarette papers. (Ex. C at ¶ 3.) It is undisputed that in April 2008, RBA's successor, CBI, distributed a promotional advertisement using the decimal marks "1.25" and "1.5" at the National Association of Tobacco Outlets trade show. Such use is contrary to the 1979 Settlement Agreement, contrary to RBA's December 12, 2001 memorandum, contrary to RBA's December 27, 2001 memorandum, and contrary to RBA's December 27, 2001 letter – all of which make clear that RBA, "and now CBI" (SMF ¶ 34, Ex. M), long ago agreed not to use the decimal marks 1.25 or 1.5 in connection with "any packaging, advertising or promotional materials for its cigarette rolling papers.

CBI's refusal to honor its promise constitutes a material breach. *See T.L. Swint*, 16 F. Supp. 2d at 941 (summary judgment granted on plaintiffs' breach of contract claim where agreement was an enforceable contract, defendant had not performed under the agreement, and

plaintiffs were subsequently damaged by defendant's non-performance).  Republic has been

damaged by CBI's breach and will be severely and irreparably damaged if CBI continues to

breach the 1979 Settlement Agreement in the future.  Republic has invested twenty-nine years of

effort, and millions of dollars, to promote and develop the market products bearing the "1.25"

and "1.5" decimal marks.  Republic is entitled to a judgment finding CBI in breach of the 1979

Settlement Agreement and enforcing the 1979 Settlement Agreement through an order requiring

specific performance.

In compliance with Rule 26(f) and this Court's Standing Order, on August 1, 2008 the

parties met to discuss the case, including the possibility of settlement.  As stated in the Report of

Parties Planning Meeting, signed by counsel for both parties and filed August 7, 2008:

> **SETTLEMENT.**  On July 18, 2008, plaintiff submitted a written
> settlement offer to defendant.  On July 31, 2008, defendant
> submitted a written response to plaintiff's settlement offer.  The
> parties engaged in good faith discussion of settlement during their
> August 1, 2008 discovery conference and certify that they have
> engaged in good faith settlement efforts, but that such efforts were
> unavailing.

## V.     CONCLUSION

Republic respectfully requests this Court grant its motion for summary judgment holding

CBI in breach of the 1979 Settlement Agreement, awarding Republic specific performance,

nominal damages and costs.

Dated: August 8, 2008                        Respectfully submitted,

                                             Republic Tobacco, L.P.


                                   By: /s/ Pei Y. Chung
                                   One of Their Attorneys

Charles S. Bergen
Peter S. Roeser
Pei Y. Chung
Grippo & Elden, LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

## CERTIFICATE OF SERVICE

I, Pei Y. Chung, an attorney, hereby certify that on **August 8, 2008**, I caused a true and complete copy of the foregoing **PLAINTIFF REPUBLIC TOBACCO, L.P.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT TO ENFORCE 1979 SETTLEMENT AGREEMENT** to be served by Electronic Mail Transmission via ECF as to Filing Users upon the following:

> Michael P. Padden
> Howrey LLP
> 321 North Clark Street
> Suite 3400
> Chicago, Illinois 60654
> Tel. (312) 595-1149
> Fax: (312) 595-2250
>
> Robert E. Scully, Jr.
> Brewster B. Taylor
> Emily Harwood Smith
> Stites & Harbsion PLLC
> 1199 N. Fairfax Street
> Suite 900
> Alexandria, Virginia 22314
> Tel. (703) 739-4900
> Fax: (703) 739-9577

> /s/ Pei Y. Chung
> Pei Y. Chung