**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REPUBLIC TOBACCO, L.P., an Illinois Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 CV 3267 |
| v. | ) ) ) | |
| COMMONWEALTH BRANDS, INC., a Kentucky Corporation | ) ) ) | Hon. Pallmeyer Magistrate Judge Ashman |
| Defendant. | ) ) ) | |

**REPUBLIC TOBACCO L.P.'S STATEMENT OF MATERIAL FACTS IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT
TO LOCAL RULE 56.1(A)(3)**

1.     Plaintiff Republic Tobacco, L.P. ("Republic") is an Illinois limited partnership that distributes tobacco and tobacco-related products, including roll-your-own cigarette papers. (Ex. A ¶ 2; Ex. B ¶ 1.)

2.     Republic is the successor-in-interest to Adams Apple Distributing Co, an Illinois corporation.  (Ex. A ¶ 4.)

3.     Republic now distributes cigarette papers under the JOB brand name and uses the decimal point marks "1.25" and "1.5" in conjunction with the distribution of JOB 1.25 and JOB 1.5 cigarette papers.  (Ex. A ¶¶ 3-4.)

4.     Adams Apple, Republic's predecessor, filed a complaint in federal court against CBI's predecessor, RBA, in 1977, captioned *Adams Apple Distributing Co. v. Robert Burton Associates, Ltd.*, No. 77 C 1486 (N.D. Ill.) (the "1977 Litigation").  (Ex. A ¶ 5; Ex. B ¶ 7.)

5.     From the time of the 1977 Litigation until 1997, Robert Burton Associates, Ltd. ("RBA"), a New York corporation, distributed tobacco-related products, including cigarette papers under the trade names JOKER and E-Z WIDER.  (Ex. B ¶ 2; Ex. C.)

6.      Imperial Tobacco plc ("Imperial"), a UK limited company, bought RBA in 1997. (Ex. B ¶ 2; Ex. D.)

7.      In April 2007, Imperial also bought CBI, which has now succeeded RBA as the distributor of roll-your-own cigarette papers under the JOKER and E-Z WIDER names in the United States.  (Ex. B ¶ 2; Ex. E.)

8.      In 1997, Imperial bought Robert Burton Associates, Ltd. ("RBA"), the exclusive distributor of JOKER and E-Z WIDER brand cigarette papers in the United States.   (Ex. B ¶ 2; Ex. E.)

9.      In April 2007, Imperial completed its acquisition of CBI and in September 2007, RBA "was merged into" CBI.  (Ex. E.)

10.      Following the merger of RBA into CBI, CBI became the successor-in-interest to RBA as importer and distributor of JOKER and E-Z WIDER cigarette papers in the United States.  (Ex. B ¶ 2; Ex. E.)

11.      The 1977 Litigation sought, among other things, adjudication of the parties' rights to use the fractional designations of "1½" and "1¼" on any packaging, advertising or promotional material for its cigarette papers.  (Ex. A ¶ 6.)

12.      In 1979, Adams Apple and RBA entered into a settlement agreement (the "1979 Settlement Agreement") resolving the 1977 Litigation.  (Ex. A ¶¶ 7-8; Ex. B ¶ 8; Ex. C.)

13.      Under the 1979 Settlement Agreement the parties agreed that RBA could use the fractional designations "1½" and "1¼"  on its packaging, advertising or promotional materials for cigarette papers so long as the designations were used in reasonable proximity to one of RBA's brand names, trademarks or logos.  (Ex. C ¶¶ 1, 2.)

14.      For the last 29 years, RBA and CBI have enjoyed the benefit of RBA's bargain by using the fractional designations to promote their products.  (Ex. F.)

15.    Adams Apple received an agreement from RBA regarding the decimal marks "1.25" and "1.5."  (Ex. C at ¶ 3.)

16.    The decimal marks look and sound different than fractional designations and are treated as distinct items under the 1979 Agreement.  (Ex. C.)

17.    In the 1979 Settlement Agreement, RBA promised that it would not make any proprietary use of the decimal point marks and would refrain from making such use of the marks on any packaging, advertising, or promotional materials.  (Ex. C ¶ 3.)

18.    The 1979 Settlement Agreement provided as follows with respect to the decimal marks:

> Subject to the provisions of Paragraphs 1 and 2 above, Robert Burton [now CBI] agrees that it will not make any proprietary use of the designations "ONE POINT FIVE", "1 POINT 5", "ONE POINT TWO FIVE", "1 POINT 25", "ONE POINT FIVE size", "1 POINT 5 size", "ONE POINT TWO FIVE size", "1.5", "1.25", "1.5 size" or "1.25 size" on any packaging, advertising or promotional materials for its cigarette rolling papers.

(Ex. C ¶ 3.)

19.    At the time of the 1979 Settlement Agreement, Republic's predecessor had filed trademark applications for the marks "1.5," "1.25" (both filed in 1977), "One Point Five," "1 Point Five," "One Point Two Five," and "1 Point 25" (filed in 1979.)  (Ex. A ¶ 9.)

20.    In the 1979 Settlement Agreement, RBA agreed that it would "not oppose any presently pending applications by Adams Apple to register" these trademarks "nor to file any cancellation proceedings against such trademarks if same are registered … as a result of Adams Apple's presently pending applications."  (Ex. C ¶ 4.)

21.    The parties agreed that either of them could use the fractional designations, but only Republic could use the decimal marks on any packaging, advertising or promotional materials for cigarette rolling papers.  (Ex. C ¶¶ 2-3.)

22.     After entering into this agreement, Republic spent the next 29 years investing countless hours and over $40 million on the promotion and development of its decimal mark products.  (Ex. A ¶ 10.)

23.     In 1977, 1.5 and 1.25 were *de minimus* new entrants in the cigarette paper market. (Ex. A ¶ 11.)

24.     Today, they have become two of the top selling brands of cigarette papers sold in the United States.   (Ex. A ¶ 11.)

25.     From 1979 to December 2001, RBA appears to have honored its agreement not to use the decimal marks to promote its cigarette papers.  (Ex. A ¶ 12.)

26.     In December 2001, Republic and RBA had occasion to affirm their understanding of the 1979 Settlement Agreement when a dispute arose regarding RBA's use of the decimal marks.  (Ex. A ¶ 13; Ex. G ¶ 2.)

27.     In a December 12, 2001 letter, Republic wrote to RBA regarding Republic's "concerns about the use by some of RBA's salesmen of Republic's registered designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products not made by Republic." (Ex. G ¶ 3; Ex. H.)

28.     A follow-up letter, dated December 21, 2001 records that RBA's president, Russ Mancuso, "acknowledged that Republic is the owner of the designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products [and] also agreed to make it clear to [RBA's] sales people that the use of the designations '1.5' and '1.25' in conjunction with RBA products must cease…"  (Ex. G ¶ 4; Ex. I.)

29.     Consistent with the 1979 Settlement Agreement and Mancuso's acknowledgement, above, RBA sent two memoranda to its sales force instructing them not to use 1.25 or 1.5 on any of its promotional materials for cigarette papers.  (Ex. G ¶¶ 6-7; Ex. K; Ex. L.)

30. In a memorandum distributed to all RBA sales personnel on December 12, 2001, RBA wrote:

> SUBJECT: Product Designations "1.5" & "1.25"
>
> When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately.
>
> If you have any questions regarding the trademark designations please contact me immediately.

(Ex. K.)

31. In a second memorandum dated December 27, 2001, RBA wrote:

> SUBJECT: Follow-up Instructions Product Designations "1.5" & "1.25"
>
> As stated in my previous memo dated December 12, 2001, when preparing presentations or promotional materials do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered trademarks used by Republic Tobacco for the cigarette paper and tobacco categories. Our Joker and E-Z Wider products should have the 1½ and 1¼ designations signifying the brand sizes.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. Again, no one should use the "1.5" and "1.25" designations in any presentations for the cigarette paper and tobacco categories except Republic Tobacco who owns the registered designations.
>
> If you have any questions regarding the trademark designations please contact me immediately.

(Ex. L.)

32. Having issued these instructions to RBA's sales force, RBA wrote to Republic's Chairman, Don Levin, on December 27, 2001 and reiterated the parties' mutual understanding that RBA was prohibited under the agreement from using the decimal marks 1.25 or 1.5 in connection with cigarette papers. RBA, through its president, said in that letter:

- 5 -

Dear Mr. Levin:

RBA has received the letter dated December 21, 2001 regarding Trademark Matters and has taken the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen. A memo (copy attached) was sent to all RBA salesmen after our initial contact on December 12, 2001 informing them of this. A second memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and "1.25" designations in conjunction with the cigarette papers and tobacco products and that RBA products utilize the 1½ and 1¼ size designations in the cigarette papers and tobacco products category.

I am hopeful that my conversation with Seth Gold and this letter clearly indicates that RBA does compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. We hope that our two companies can continue to transact business in quiet enjoyment in the market place.

Please contact me if you have any further questions.

Very truly yours,

**RBA Associates, Ltd.**

Russell G. Mancuso

(Ex. G ¶ 5; Ex. J.)

33.    In light of RBA's prompt remedial action, Republic did not sue RBA in 2001 for its violation of the 1979 Settlement Agreement. (Ex. G ¶ 8.)

34.    In April 2008, CBI circulated a sales advertisement at the National Association of Tobacco Outlets trade show. (Ex. G ¶ 9; Ex. M.)

35.    According to the advertisement:

JOKER PAPERS

\*        \*        \*

<u>Display Contains:</u>
48 ea    Regular Orange
24 ea    Single Wide Double
24 ea    1.25
48 ea    1.50
Case Pack is 12 Display per case.

(Ex. M.)

36.    CBI later agreed in an email to refrain from using the decimal marks "at this

time" and "in this instance," but it also asserted that "RBA, and now CBI has taken the position

that the [marks 1.25 and 1.5] can be used descriptively."  (Ex. G ¶ 10; Ex. N.)

37.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and

28 U.S. C. § 1338(a) and (b), as it involves a violation of and a request for relief under Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (Ex. B ¶ 4.)

38.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c). (Ex. B. ¶ 5.)

Dated:  August 8, 2008                              Respectfully submitted,

                                                   Republic Tobacco, L.P.


                              By:  /s/ Pei Y. Chung
                                   One of Their Attorneys

                                   Charles S. Bergen
                                   Peter S. Roeser
                                   Pei Y. Chung
                                   Grippo & Elden, LLC
                                   111 South Wacker Drive
                                   Chicago, Illinois 60606
                                   (312) 704-7700

## <u>CERTIFICATE OF SERVICE</u>

I, Pei Y. Chung, an attorney, hereby certify that on **August 8, 2008**, I caused a true and complete copy of the foregoing **REPUBLIC TOBACCO L.P.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56(A)(3)** to be served by Electronic Mail Transmission via ECF as to Filing Users upon the following:

> Michael P. Padden
> Howrey LLP
> 321 North Clark Street
> Suite 3400
> Chicago, Illinois 60654
> Tel. (312) 595-1149
> Fax: (312) 595-2250
>
> Robert E. Scully, Jr.
> Brewster B. Taylor
> Emily Harwood Smith
>  Stites & Harbsion PLLC
> 1199 N. Fairfax Street
> Suite 900
> Alexandria, Virginia 22314
> Tel. (703) 739-4900
> Fax: (703) 739-9577

> /s/ Pei Y. Chung
> Pei Y. Chung

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

REPUBLIC TOBACCO, L.P., an Illinois
Limited Partnership,,

     Plaintiff,

     v.

COMMONWEALTH BRANDS, INC., a
Kentucky Corporation,,

     Defendant.

No. 08 CV 3267

Hon. Hon. Rebecca R. Pallmeyer

Magistrate Judge Martin C. Ashman

# EXHIBITS TO REPUBLIC TOBACCO L.P.'S

# STATEMENT OF MATERIAL FACTS IN SUPPORT OF

# ITS MOTION FOR SUMMARY JUDGMENT

# PURSUANT TO LOCAL RULE 56.1(A)(3)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REPUBLIC TOBACCO, L.P., an Illinois )
Limited Partnership, )
)
Plaintiff, )
) No. 08 CV 3267
v. )
)
COMMONWEALTH BRANDS, INC., a ) Hon. Pallmeyer
Kentucky Corporation ) Magistrate Judge Ashman
)
Defendant. )

## DECLARATION OF DONALD R. LEVIN

I, Donald R. Levin, having personal knowledge of the facts stated below and being

competent to testify thereto, declare as follows:

1.      I am the current Chairman of Republic Tobacco, L.P. ("Republic"), the plaintiff in

this action.

2.      Republic is an Illinois limited partnership that distributes tobacco and tobacco-

related products, including roll-your-own cigarette papers.

3.      Republic distributes roll-your-own cigarette papers using the decimal marks

"1.25" and "1.5."

4.      The decimal marks are used in conjunction with the distribution of JOB brand

cigarette papers.  Republic has the exclusive right to distribute JOB 1.5 and JOB 1.25 cigarette

papers, as successor-in-interest to Adams Apple Distributing Co., an Illinois corporation.

5.      In 1977, Adams Apple Distributing Co., filed a complaint in federal court against

Robert Burton Associates ("RBA") captioned *Adams Apple Distributing Co. v. Robert Burton

Associates, Ltd.*, No. 77 C 1486 (N.D. Ill.) (the "1977 Litigation").  I was President of Adams

Apple at all relevant times.

6.     The 1977 Litigation sought, among other things, adjudication of the parties' rights to use the fractional designations of "1½" and "1¼" on packaging, advertising or promotional material for cigarette papers.

7.     Adams Apple and RBA entered into a settlement agreement (the "1979 Settlement Agreement") resolving the 1977 Litigation.  I signed the 1979 Settlement Agreement on behalf of Adams Apple.

8.     Attached as Exhibit C is a true and correct copy of the executed 1979 Settlement Agreement.

9.     At the time of the 1979 Settlement Agreement, Adams Apple had filed trademark applications for the marks "1.5," "1.25," (both filed in 1977), "One Point Five," "1 Point 5," "One Point Two Five" and "1 Point 25" (filed in 1979).

10.     After the execution of the 1979 Settlement Agreement, Adams Apple and its successor, Republic, spent the next 29 years promoting products bearing the "1.5" and "1.25" decimal marks.  Republic invested countless employee hours and well over $40 million in building its decimal-mark brands.

11.     In 1977, JOB 1.5 and JOB 1.25 were *de minimus* new entrants in the cigarette paper market.  Today, JOB 1.5 is one of the top three best-selling brands of cigarette paper sold in the United States.  JOB 1.25 is among the top five best-selling brands of cigarette paper sold in the United States.

12.     From 1979 until 2001, I believe that RBA honored its agreement not to use our decimal marks "1.25" and "1.5" on any packaging, advertising or promotional materials for its brands of cigarette papers.

13.     In 2001, Republic and Robert Burton Associates, Ltd. had occasion to reaffirm their understanding of the 1979 Settlement Agreement that settled the 1977 litigation.  The

details of this activity are set forth in the Declaration of Seth I. Gold, which is being filed contemporaneously.

14.    From 2001 through April 2008, RBA, to the best of my knowledge, continued to honor its agreement not to use the decimal marks "1.25" and "1.5" on any packaging, advertising or promotional materials for its brands of cigarette papers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of August, 2008.

Donald R. Levin

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REPUBLIC TOBACCO, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 CV 3267 |
| | ) | |
| v. | ) | Honorable Rebecca R. Pallmeyer |
| | ) | |
| COMMONWEALTH BRANDS, INC., | ) | Magistrate Judge Martin C. Ashman |
| | ) | |
| Defendant. | ) | |

**ANSWER, GROUNDS OF DEFENSE AND COUNTERCLAIM
OF COMMONWEALTH BRANDS, INC.**

Defendant Commonwealth Brands, Inc., answers the Complaint as follows:

PARTIES

1.     Plaintiff Republic Tobacco, L.P. ("Republic Tobacco") is an Illinois limited partnership

that distributes roll-your-own cigarette papers, tobacco and other tobacco-related

products, including those sold under the TOP, JOB and other leading brand names.

Republic Tobacco has its principal place of business at 2301 Ravine Way, Glenview,

Illinois. In 1983, Republic Tobacco became successor-in-interest to Adams Apple

Distributing Co., as the importer and distributor of JOB cigarette papers, including its

"1.5" and "1.25" cigarette papers.

ANSWER:

 Defendant admits the allegations in paragraph 1 except it denies knowledge or information

sufficient to form a belief about whether Republic Tobacco became successor-in-interest to

Adams Apple Distributing Co., as the importer and distributor of JOB cigarette papers and deny

that JOB has "1.5" and "1.25" cigarette papers.

2.    Defendant Commonwealth Brands, Inc. ("CBI') is, on information and belief, a Kentucky

corporation with its headquarters at 900 Church Street, Bowling Green, Kentucky. CBI is

the wholly-owned subsidiary of Imperial Tobacco Group plc, ("Imperial"). According to

its website, Imperial "is the world's fourth largest international tobacco company, which

manufactures, markets and sells a comprehensive range of cigarettes, tobaccos, rolling

papers and tubes." Previously, in 1997, Imperial had bought Robert Burton Associates,

Ltd. ("RBA"), the U.S. distributor of "JOKER" and "E-Z Wider" brand cigarette papers.

In April 2007 Imperial completed its acquisition of CBI which at the time was the fourth

largest cigarette manufacturer in the United States. Following the acquisition, Imperial

made CBI the successor-in-interest to RBA, and CBI took over RBA's right to import and

distribute "JOKER" and "E-Z Wider" brand roll-your-own cigarette paper.

ANSWER:

Defendant admits the allegations in paragraph 1, except it denies that Imperial made CBI the

"successor-in-interest to RBA".  CBI further states that the Website speaks for itself and any

characterization inconsistent with contents of the website is denied.

3.    This Complaint is filed to enforce an earlier agreement dated November 2, 1979 (the

"979 Settlement Agreement"), in which the parties agreed to certain terms in return for

which Republic agreed to stipulate to the dismissal of its pending case against REA,

CBI's predecessor-in-interest. A copy of the 1979 Settlement Agreement is attached

hereto as Exhibit A.

ANSWER:

Defendant has not been able to obtain a copy of the purported 1979 Settlement Agreement from Robert Burton Associates, the party to that agreement. Upon information and belief, Robert Burton Associates does not have an original counterpart copy of any document memorializing the terms of the 30 year old settlement agreement. Consequently, Defendant lacks sufficient knowledge or information to admit or deny that Exhibit A is an accurate copy of the agreement that resolved the 1979 litigation. Defendant admits that Plaintiff states that it is bringing this lawsuit to enforce an earlier agreement.

JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction under 28 U.S.C. § 1332, as this dispute arises

        between citizens of different states. This Court also has jurisdiction over this controversy

        pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b), as it involves violation of

        and a request for relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

ANSWER:

Denies that the Complaint sets forth a basis for diversity jurisdiction but admits that this Court has subject-matter jurisdiction over the putative claims under the Lanham Act.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

ANSWER:

Admits.

308LT:0000:67232:1:ALEXANDRIA

<u>FACTUAL ALLEGATIONS</u>

6.  For over 30 years, Republic Tobacco and its predecessor, Adams Apple Distributing Co.

   (collectively hereinafter "Republic") have had the exclusive right to distribute JOB

   cigarette papers in the United States. Over that period of time, Republic has used the

   decimal designations "1.5" and "1.25" to identify two of its best-selling and well-known

   types of JOB cigarette papers.

ANSWER:

 Defendant lacks knowledge or information sufficient to form a belief as to whether or not

Adams Apple is the predecessor of Republic Tobacco and lacks knowledge or information

sufficient to form a belief about Plaintiff's and Adams Apple's rights to distribute JOB cigarette

papers in the United States for over thirty years.  The remaining allegations are denied.

7.  In 1977, Republic filed an action against RBA, CBI's predecessor-in-interest, captioned

   *Adams Apple Distributing Co. v. Robert Burton Associates, Ltd,* No. 77 C 1486 (N.D. Ill.)

   (the "1977 Litigation"). The 1977 Litigation sought, *inter alia,* injunctive relief to halt

   RBA's unlawful infringement of Republic's common-law "One-and-a-half" and "1-1/2"

   marks and to prevent consumer confusion. During the litigation, RBA took the position

   that the "One- and-a-half' or "1-1/2" designations were merely "descriptive," and were

   not exclusively identified with cigarette papers sold by Republic.

ANSWER:

 Defendant admits that in 1977 Adams Apple Distributing Co. filed an action against Robert

Burton Associates, Ltd., captioned *Adams Apple Distributing Co. v. Robert Burton Associates

Ltd.*, No. 77 C 1486 (N.D. Ill.) and admits that Robert Burton Associates Ltd. took, and takes, the

position that the "one-and-a-half" or "1-1/2" designations, as well as other numerical

designations, including the numerical designations alleged to be Plaintiff's marks in its

Complaint, are merely descriptive or generic and are not exclusively identified with rolling

papers sold by Republic or any other company. The remaining allegations are denied.

8.      The parties settled the 1977 Litigation in 1979. They agreed that so long as the fractional

        designations "1- 1/2 size" or "1-1/4 size" were used in "reasonable proximity" to one of

        RBA's brand names, trademarks or logos, such use would be acceptable. Thus, the 1979

        Settlement Agreement provides:

> Robert Burton agrees that henceforth all of Robert Burton's cigarette rolling paper
> packaging, advertising and promotional materials which contain the term "1-1/2
> Size" will also include, in reasonable proximity thereto, a separate brand name,
> trademark, or logo, such for example as "E-Z Wider" or "Joker" to the end that the
> name or brand name of Robert Burton's cigarette rolling paper shall not appear to
> be solely and only "1-1/2 Size.".

A similar provision governs the use of "1-1/4 size." Ex. A, ¶¶ 1,2.

ANSWER:

 Defendant admits that the 1977 lawsuit between Adams Apple Distributing Co. and Robert

Burton Associates, Ltd. was settled in 1979. CBI further states that it is not a party to the alleged

1979 Settlement Agreement. If Exhibit A is a true and accurate copy of the alleged 1979

Settlement Agreement, that document speaks for itself, and any characterization inconsistent

with contents of the document is denied.

9.      In return, RBA agreed that the "1.5" and "1.25" marks used by Republic belonged solely

        to Republic. Thus, the 1979 Settlement Agreement provides that:

> [RBA] agrees that it will not make any proprietary use of the designations "ONE
> POINT FIVE," "1 POINT 5," "ONE POINT TWO FIVE," "1 POINT 25," "ONE
> POINT FIVE size," "1 POINT 5 size," "ONE POINT TWO FIVE size," "1

POINT 25 size "1.5," "1.25," "1.5 size" or "1.25 size" on any packaging, advertising or promotional materials for its cigarette rolling papers.

1979 Settlement Agreement, Ex. A, ¶ 3.

ANSWER:

Defendant specifically denies that RBA "agreed that the '1.5' and '1.25' marks used by Republic belonged solely to Republic." CBI further states that it is not a party to the alleged 1979 Settlement Agreement. If Exhibit A is a true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for itself, and any characterization inconsistent with contents of the document is denied.

10.    Furthermore, RBA agreed that it would not oppose:

> ... any presently pending applications by Adams Apple to register the trademarks "ONE POINT FIVE," "1 POINT 5," "1.5" and/or "ONE POINT TWO FIVE" "1 POINT 25," OR "1.25" for cigarette rolling papers, nor file any cancellation proceedings against such trademarks if same are registered by any competent governmental authority as the result of Adams Apple's presently pending applications.

*Id*. 14.

ANSWER:

Defendant denies that it is a party to the alleged 1979 Settlement Agreement. If Exhibit A is a true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for itself, and any characterization inconsistent with contents of the document is denied.

11.    On this basis, the parties stipulated to dismissal of the action "with prejudice and without the assessment of any costs or damages to any party," and agreed to refrain from any further litigation of the issues.

ANSWER:

 Defendant denies that it is a party to the alleged 1979 Settlement Agreement.  If Exhibit A is a

true and accurate copy of the alleged 1979 Settlement Agreement, that document speaks for

itself, and any characterization inconsistent with contents of the document is denied.

12.    Over the next 29 years, in reliance upon the 1979 Settlement Agreement, Republic

       extensively promoted and developed its line of " 1.5," "1.25" and, beginning in 1985,

       "1.0" cigarette papers. Through hard work, the investment of time and money and

       through the marketing of a unique paper, used exclusively in the market with decimal

       designations, the "1.5" and "1.25" brands grew over the next thirty years to be among the

       top brands sold in the United States.

ANSWER:

 Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's reliance.

The remaining allegations are denied.

13.    In 2001, RBA and Republic had occasion to reaffirm and expand their understanding of

       the 1979 Settlement Agreement. In a December 12,2001 letter, Republic wrote to RBA

       regarding "our concerns about the use by some of RBA's salesmen of Republic's

       registered designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco

       products not made by Republic." Ex. B. A follow-up letter, dated December 21, 2001

       records that RBA's president, Russ Mancuso, verbally "acknowledged that Republic is

       the owner of the designations' I .5' and '1.25' in conjunction with cigarette papers and

       tobacco products [and] also agreed to make it clear to [RBA's] sales people that the use of

       the designations '1.5' and '1.25' in conjunction with RBA products must cease ..." Ex. C.

ANSWER:

Defendant denies that it is a party to the alleged 1979 Settlement Agreement.  The letters alleged

in paragraph 13 were not addressed to or authored on behalf of CBI and CBI was not a party to

that correspondence.  CBI admits that the letters attached as Exhibits B and C are what they

purport to be and states that those documents speak for themselves, and CBI denies any

characterization inconsistent with their contents.

14.    RBA followed through on its commitment and sent two memoranda to its sales force

regarding "Product Designations '1.5' and '1.25'" and "Follow-up Instructions Product

Designations '1.5' and '1.25.'" (Exs. D and E.)

ANSWER:

The memoranda alleged in paragraph 14 were not prepared on behalf of CBI.  CBI admits that

the documents attached as Exhibits D and E are what they purport to be and states that those

documents speak for themselves, and any characterization of those documents inconsistent with

their contents is denied.

15.    In a memorandum distributed to all RBA sales personnel on December 12, 2001 RBA's

president wrote:

SUBJECT: Product Designations "1.5" & "1.25" When preparing presentations or
promotional materials please do not use the "1.5" and "1.25" designations
for our Joker and E-Z Wider cigarette paper products as these are registered by
Republic Tobacco for the cigarette paper and tobacco categories.

If you mistakenly used the "1.5" and "1.25" designations in previous
presentations cease and desist immediately. If you have any questions regarding
the trademark designations please contact me immediately.

(Ex. D).

ANSWER:

The memorandum alleged in paragraph 15 was not prepared on behalf of CBI. CBI admits that

the document attached as Exhibits D is what it purports to be and states that the document speaks

for itself, and any characterization of the document inconsistent with its contents is denied.

16.    In a second memorandum sent to all sales personnel on December 27,2001, RBA

reinforced the message:

> SUBJECT: Follow-up Instructions Product Designations "1.5" & "1.25"
>
> As stated in my previous memo dated December 12,2001, when preparing
> presentations or promotional materials do not use the "1.5" and "1.25"
> designations for our Joker and E-Z Wider cigarette paper products as these are
> registered trademarks used by Republic Tobacco for the cigarette paper and
> tobacco categories. Our Joker and E-Z Wider products should have the 1 ½ and
> 1 ¼ designations signifying the brand sizes.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous
> presentations cease and desist immediately. Again, no one should use the "1.5"
> and "1.25" designations in any presentations for the cigarette paper and tobacco
> categories except Republic Tobacco who owns the registered designations.
>
> If you have any questions regarding the trademark designations please
> contact me immediately.

(Ex.. E.)

ANSWER:

The memorandum alleged in paragraph 16 was not prepared on behalf of CBI. CBI admits that

the document attached as Exhibits E is what it purports to be and states that the document speaks

for itself, and any characterization of the document inconsistent with its contents is denied.

17.    Having issued these unequivocal instructions to his sales force, RBA's president wrote to

Republic on December 27, 2001. The December 27, 2001 letter states in its entirety:

Mr. Don Levin
President
Republic Tobacco
2301 Ravine Way Glenview,
Illinois 60025

Re: Trademark Matters

Dear Mr. Levin:

RBA has received the letter dated December 21, 200 I regarding Trademark Matters and has taken the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen. A memo (copy attached) was sent to all RBA salesmen after our initial contact on December 12,2001 informing them of this. A second memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic is the owner of the" 1.5" and "1.25" designations in conjunction with the cigarette papers and tobacco products and that RBA products utilize the 1 1/4 and 1 1/2 size designations in the cigarette papers and tobacco products category.

I am hopeful that my conversation with Seth Gold and this  letter clearly indicates that RBA does compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. We hope that our two companies can continue to transact business in quiet enjoyment in the market place. Please contact me if you have any further questions.

Very truly yours,

Robert Burton Associates, Ltd.

Russell G. Mancuso

(Ex. F.)

ANSWER:

The letter alleged in paragraph 17 was not addressed to or authored on behalf of CBI, and CBI was not a party to that correspondence.  CBI admits that the letter attached as Exhibit F is what it purports to be and states that the document speaks for itself, and CBI denies any characterization inconsistent with its contents.

18.    In reliance on RBA's prompt remedial action, Republic did not sue RBA in 2001 for violation of the 1979 Settlement Agreement and infringement of its "1.5" and "1.25 marks.

ANSWER:

Defendant admits that Republic did not sue Robert Burton Associates Ltd. in 2001 and

Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's reliance.

The remaining allegations are denied.

19.    In 2007, CBI succeeded to RBA's rights to import and distribute JOKER and E-Z Wider

        cigarette papers.  Later, at a November 2007 meeting between CBI's owner, Imperial

        Tobacco, and Republic, Imperial sought to buyout Republic. Republic's current owner

        refused to sell, and the unlawful acts complained of herein followed.

ANSWER:

Denies.

20.    Following the unsuccessful attempt to buy Republic, Imperial's subsidiary, CBI violated

        the 1979 Settlement Agreement and the 2001 Letter Agreements. CBI chose to infringe

        upon Republic's well-established "1.5" and "1.25" marks and to engage in unfair

        competition and deceptive trade practices.

ANSWER:

Denies.

21.    At the National Association of Tobacco Outlets trade show in April 2008, CBI circulated

        a sales advertisement that violates the 1979 Settlement Agreement and the 2001 Letter

        Agreements. A copy or CBI's advertisement is attached as Exhibit G. The advertisement

        infringes Republic's well-established "1.5" and "1.25" marks and constitutes unfair

        competition. It purports to offer a counter display of "1.50" and "1.25" JOKER Papers.

        According to the advertisement:

JOKER PAPERS

* * *

Display Contains:

48 ea Regular Orange

24 ea Single Wide Double

24 ea   1.25

48 ea   1.50

Case Pack is 12 Display per case.

(Ex. G).

ANSWER:

Defendant admits that the advertisement for JOKER rolling papers of various sizes was prepared
by and circulated by a sales representative at the April 2008 NATO trade show in Las Vegas,
Nevada.  The remaining allegations are denied.

22.     CBI does not deny that it circulated the advertisement at the trade show, but claims that

"RBA, and now CBI has taken the position that the [marks, "1.5" and "1.25"] can be used

descriptively." (Ex. H.) At the same time, CBI seeks to avoid formal resolution of this

question, seeking to palliate Republic by stating "we agree to refrain from the use of

these numbers ill this time and assure you that the use in this instance was not

intentional" (emphasis added.) Republic strongly disagrees with CBI's attempt to both

claim the right to use Republic's marks, while disclaiming its intent to do so "in this

instance." Republic brings this action to obtain, *inter alia*, a declaration of its rights

versus CBI with respect to the use of marks "1.5" and "1.25" in connection with the

marketing and sale of cigarette paper.

ANSWER:

Defendant admits the first sentence of the allegations in paragraph 22 and lacks knowledge or

information sufficient to form a belief about Plaintiff's purpose in filing this action.  The

remaining allegations are denied.

## COUNT I
### Breach Of Thee 1979 Settlement Agreement

23.    Republic has fulfilled all of its responsibilities under the 1979 Settlement Agreement.

ANSWER:

Denies.

24.    CBI has violated the 1979 Settlement Agreement between its predecessor-in- interest,

       RBA, and Republic.

ANSWER:

Denies.

25.    An actual controversy exists as to the scope of the parties' rights under the 1979

       Settlement Agreement and Republic seeks a declaration that pursuant to the 1979

       Settlement Agreement, as implemented through the parties' course of conduct and course

       of performance, CBI may not make use of Republic's well-established "IS' and "1.25"

       marks for cigarette papers. Republic also seeks damages for any harm arising out of

       CBI's breach of the 1979 Settlement Agreement.

308LT:0000:67232:1:ALEXANDRIA

ANSWER:

Denies.

26.     CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER

        cigarette papers has caused, and unless enjoined by this Court will continue to cause,

        irreparable injury and other damages to Republic's business, reputation, good will,

        product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

## COUNT II
### *Promissory Estoppel*

27.     Republic realleges and incorporates by reference the allegations of Paragraphs 1-26 of

        this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph

27.

28.     In 2001, CBI's predecessor, RBA, reaffirmed its commitment not to use the designations

        "1.5" or "1.25" in connection with its own Joker and E-Z Wider cigarette paper products

        "as these are registered by Republic Tobacco for the cigarette paper and tobacco

        categories." (Ex. D.)

ANSWER:

Denies.

308LT:0000:67232:1:ALEXANDRIA

29.    RBA instructed its own sales personnel to "cease and desist immediately" any use of

those designations "in any presentations for cigarette paper and tobacco categories except

Republic Tobacco who owns the registered designations." (Ex. E.)

ANSWER:

Denies.

30.    To forestall litigation, RBA advised Republic that it "has taken the appropriate actions to

insure that Republic's registered designations "1.5" and "1.25" are not being used by

mistake in presentations by RBA salesmen," and that, "A second memo ... is being sent to

RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and

"1.25" designations ... " (Ex. F.)

ANSWER:

The memorandum attached as Exhibit F was not authored by or prepared on behalf of CBI. CBI

admits that Exhibit F is what it purports to be and states that Exhibit F speaks for itself, and any

characterization inconsistent with the contents of the documents is denied.

31.    Republic reasonably relied upon these representations. CBI has now renounced its

obligation to honor these promises. Republic seeks a judgment declaring its rights and

estopping CBI from reneging on the promises made by its predecessor in interest, RBA,

and awarding Republic its damages for any harm it has suffered due to CBI's breach.

ANSWER:

Denies

32.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER

cigarette papers has caused, and unless enjoined by this Court will continue to cause,

irreparable injury and other damages to Republic's business, reputation, good will,

product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

## COUNT III
### Lanham Act 15 U.S.C. § 1125(a)(1)(A) False
### Designation Of Origin And Federal Trademark Infringement

33.    Republic realleges and incorporates by reference the allegations of Paragraphs 1-32 of

this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph

33.

34.    CBI's use of "1.5" and 1.25" in connection with the JOKER brand of cigarette papers is

without permission or authority of Republic, and is likely to cause confusion, to cause

mistake and/or to deceive.

ANSWER:

Defendant denies that CBI is currently using "1.5" and "1.25", denies that CBI needs authority of

Plaintiff to use the size descriptors "1.5" and "1.25" in connection with rolling papers and denies

that use of the size descriptors is likely to cause confusion, to cause mistake and/or to deceive.

35.    CBI's use of "1.5" and "1.25" in connection with the JOKER brand of cigarette papers

has been made not withstanding Republic's prior rights in the marks "1.5" and "1.25"

papers.

308LT:0000:67232:1:ALEXANDRIA

ANSWER:

Defendant admits that CBI used the size descriptors "1.5" and "1.25" in connection with the

JOKER brand of cigarette papers in the advertisement attached to the Complaint as Exhibit G.

CBI denies that Plaintiff has proprietary rights in the size descriptors "1.5" and "1.25" and denies

that they are trademarks.

36.     CBI's past and continuing use of the marks "1.5" and "1.25" in connection with the

        JOKER brand of cigarette papers is in violation of Republic's common law rights in the

        "1.5" and "1.25" marks.

ANSWER:

Defendant denies that its use of "1.5" and "1.25" is "continuing", denies that "1.5" and "1.25"

are marks and denies that plaintiff has common law rights in "1.5" and "1.25" which could be

violated.

37.     CBI is infringing Republic's rights to the" 1.5" and "1.25" marks in interstate commerce

        by various acts, including, without limitation, the advertising, offering for sale, sale, and

        distribution of JOKER cigarette papers under the confusingly similar designations "1.5"

        and "1.25."

ANSWER:

Denies.

38.     CBI's use of the designations "1.5" and "1.25" in connection with JOKER brand of

        cigarette papers constitutes false designation of origin, false or misleading description

        and representation of fact which is likely to cause confusion and to cause mistake, and to

deceive as to the affiliation, connection or association of Republic with CBI and as to the origin, sponsorship, or approval of CBI's products and commercial activities by Republic.

ANSWER:

Denies.

39.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damages to Republic's business, reputation, good will, product sales, and image. Republic has no adequate remedy at law.

ANSWER:

Denies.

40.    Pursuant to Section 34 of the Lanham Act, 15 U. S. C. § 1116, Republic seeks injunctive relief restraining CBI from using the designations "1.5" and "1.25" in connection with the offering, sale, distribution, advertising, and marketing of any cigarette papers other than those distributed by Republic.

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 40. Defendant denies that Plaintiff is entitled to such relief.

41.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Republic seeks to recover any profits CBI may have received and any damages Republic may have incurred as a result of CBI's unlawful conduct, as well as Republic's litigation costs.

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 41. Defendant

denies that Plaintiff is entitled to such relief.

42.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1118, Republic seeks an order

        requiring CBI to deliver for destruction all advertisements, labels, packages, and other

        materials bearing or reproducing the marks "1.5" or "1.25"

ANSWER:

Defendant admits that Plaintiff purports to seek the relief alleged in paragraph 42. Defendant

denies that Plaintiff is entitled to such relief.


## COUNT IV
## Unfair Competition And Trademark Infringement

43.     Republic realleges and incorporates by reference the allegations of Paragraphs 1- 42 of

        this Complaint as if set forth fully herein.

ANSWER:

Defendant adopts by reference the answers to the allegations adopted by reference in paragraph

43.

44.     Through continuous use of the marks "1.5' and" 1.25" in advertising, offering for sale,

        distribution, marketing, and labeling of cigarette rolling papers, Republic and its

        predecessors have acquired common law rights to use the marks" 1.5" and "1.25 for such

        products.

ANSWER:

Denies.

45.     CBI's use of the designations "1.5" and "1.25" are likely to cause confusion, or to cause

        mistake, or to deceive as to the affiliation, connection, or association of CBI with

        Republic, or as to the origin, sponsorship, or approval of CBI's products and commercial

        activities by Republic such that CBI's acts constitute infringement of Republic's

        protectable proprietary rights in its mark, misappropriation of Republic's goodwill, and

        unfair competition under Illinois law, entitling Republic to relief, including, but not

        limited to, injunctive relief and damages.

ANSWER:

Denies.

## JURY DEMAND

46.     Pursuant to Fed. R. Civ. P. 38(b), Republic respectfully demands a trial by jury of all

        issues triable by a jury in this case.

ANSWER:

Admit that Plaintiff demands a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

47.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

308LT:0000:67232:1:ALEXANDRIA

SECOND AFFIRMATIVE DEFENSE

48.    There is no subject matter jurisdiction over the diversity claims alleged in Counts 1 and 2

because Plaintiff fails to allege the citizenship of its partners, and it fails to allege an

adequate amount in controversy.

THIRD AFFIRMATIVE DEFENSE

49.    The court should decline to exercise its discretionary declaratory judgment jurisdiction

over Counts 1 and 2 in the Complaint because there is no privity of contract between

Plaintiff and Defendant CBI and the Defendant CBI is not bound by the alleged

agreement.

FOURTH AFFIRMATIVE DEFENSE

50.    Plaintiff is not the owner of the alleged marks at issue and lacks standing to bring the

claims set forth in the Complaint.

FIFTH AFFIRMATIVE DEFENSE

51.    Plaintiff is not the real party in interest for purposes of Rule 17.

SIXTH AFFIRMATIVE DEFENSE

52.    CBI's use of "1.25" and "1.5" was a fair use to describe the size of its rolling papers.

SEVENTH AFFIRMATIVE DEFENSE

53.    Plaintiff Republic Tobacco is guilty of trademark misuse and/or unclean hands because it

has attempted to enforce rights in numerical designations in which it has no rights;  even

if it could acquire rights in the numerical designations, its attempt to prevent fair use of

the numerical designations in their descriptive meaning is grossly inequitable

misconduct.

### EIGHTH AFFIRMATIVE DEFENSE

54.    Plaintiff's alleged marks "1.5" and "1.25" are generic or descriptive size descriptors

which are functional and incapable of legal protection under trademark or unfair

competition law.

### NINTH AFFIRMATIVE DEFENSE

55.    Plaintiff's alleged marks "1.5" and "1.25" are not inherently distinctive and have not

acquired secondary meaning.

### TENTH AFFIRMATIVE DEFENSE

56.    If Exhibit A is the 1979 Settlement Agreement, and if CBI is bound by it, CBI's conduct

was permitted, and thus privileged, pursuant to paragraph 5 of that Agreement and by

Plaintiff's predecessor's implied assurance that fair use would not be precluded by the

Agreement.

### ELEVENTH AFFIRMATIVE DEFENSE

57.    CBI's use of "1.25" and "1.5" to describe the size of its rolling papers in the

advertisement at issue was not likely to cause confusion with Plaintiff's alleged marks.

### TWELFTH AFFIRMATIVE DEFENSE

58.    Plaintiff has abandoned any rights that it claims to have had in the alleged marks "1.5"

and "1.25".

WHEREFORE, Defendant demands judgment in its favor and dismissal of the Plaintiff's claims with prejudice.

## COUNTERCLAIM

1.   This court has subject matter jurisdiction over this counterclaim pursuant to Federal Rule of Civil Procedure 13(a) and 28 U.S.C. § 1367(a).

2.   Commonwealth Brands, Inc. ("CBI") brings this counterclaim pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, because a case of actual controversy within this court's jurisdiction exists which permits this court to declare the rights and legal relations of CBI.

3.   CBI is likely to be damaged by Republic Tobacco, L.P.'s continued assertion in its Complaint, and in the relevant market in interstate commerce in the United States, that it owns the exclusive right to use the numerical designations "1.5" and "1.25" in connection with cigarette papers and has the right to exclude CBI from using those functionally descriptive or generic terms to describe the sizes of its own cigarette papers.

4.   CBI is actually involved in the sale and distribution of cigarette rolling papers, which are products of the same nature of Plaintiff's goods described in the Complaint.

5.   CBI is not a party to the 1979 Settlement Agreement alleged in the Complaint of Plaintiff, Republic Tobacco.

6.   CBI has used the decimal designations "1.5" and "1.25" in interstate commerce in the United States to describe the relative size of its cigarette papers.

7.      CBI has a valid and legal right to describe its cigarette rolling papers by size using the functionally descriptive or generic terms.  Republic improperly claims the exclusive right to use those terms.

8.      The numerical designations "1.5" and "1.25" are functionally descriptive or generic and incapable of becoming marks.

9.      Even if the numerical designations "1.5" and "1.25" are considered merely descriptive, they have not acquired secondary meaning as Plaintiff's marks.  Further, even if the numerical designations had become Plaintiff's marks, any use of the numerical designations by CBI to describe the size of its cigarette papers is a privileged fair use.

10.     Republic has not acquired and can not acquire, any trademark rights in the numerical designations "1.5" and "1.25".

11.     CBI's use of the numerical designations "1.5" and "1.25" in interstate commerce in the United States to describe the relative size of its cigarette papers was a fair use and did not infringe any legally protected rights claimed by the Plaintiff, Republic Tobacco, in its Complaint.

12.     CBI desires to use the decimal designations "1.5" and "1.25" in interstate commerce in the United States, in the future, to describe the relative size of its cigarette papers free from the future claims of trademark infringement, unfair competition and breach of contract asserted by Republic Tobacco.

WHEREFORE, Defendant and Counterclaimant Commonwealth Brands, Inc., prays that:

1)      This Court exercise its jurisdiction under 28 U.S.C. § 2201 to:

(a)    declare that Commonwealth Brands, Inc. has the right to use the numerical

designations "1.25" and "1.5" in the United States to describe the relative sizes of

its cigarette papers;

(b)    declare that the numerical designations "1.25" and "1.5" are functionally

descriptive or generic as used in connection with cigarette papers, or, if merely

descriptive, have not attained secondary meaning and are not protectable under

the trademark laws or, in the alternative, declare that even if the numerical

designations may be protected under the trademark laws, CBI's use of them is a

fair use;

(c)    declare that CBI's use of the decimal designations does not violate the alleged

1979 Settlement Agreement, to which it is not a party;

(d)    this Court award CBI attorneys' fees and costs of this action; and

(e)    grant such other and further relief as it deems just.

Respectfully Submitted,

Date:  July 22, 2008                              _____/s/Michael P. Padden/_____
                                                  Michael P. Padden
                                                  Howrey LLP
                                                  321 North Clark Street
                                                  Suite 3400
                                                  Chicago, Illinois 60654
                                                  Tel. (312) 595-1149
                                                  Fax: (312) 595-2250

                                                  And

                                                  Robert E. Scully, Jr.
                                                  (*pro hac vice* application pending)
                                                  Brewster B. Taylor
                                                  (*pro hac vice* application pending)
                                                  Emily Harwood Smith

(*pro hac vice* application pending)
Stites & Harbsion PLLC
1199 N. Fairfax Street
Suite 900
Alexandria, Virginia 22314
Tel. (703) 739-4900
Fax: (703) 739-9577

Attorneys for Defendant,
Commonwealth Brands, Inc.

## CERTIFICATE OF SERVICE

I, Michael P. Padden, counsel for Defendant Commonwealth Brands, Inc., hereby certify that a copy of the foregoing Answer, Grounds of Defense and Counterclaim of Commonwealth Brands, Inc., was served via electronic mail on this 22nd day of July, 2008 upon each of the following counsel of record:

> Charles Bergen
> Grippo & Elden
> 111 S. Wacker Drive
> Chicago, Illinois 60606
> cbergen@grippoelden.com
>
> Peter S. Roeser
> proeser@grippoelden.com


  /s/ Michael P. Padden        /
  Michael P. Padden

# EXHIBIT C

AGREEMENT

This Agreement, made this 2nd day of November, 1979 between ADAMS APPLE DISTRIBUTING COMPANY, 5100 North Ravenswood, Chicago, Illinois 60640, an Illinois corporation (hereinafter Adams Apple), HEAD IMPORTS, INC., Box 3019, Aspen, Colorado 81611, a Colorado corporation (hereinafter Head), and ROBERT BURTON ASSOCIATES, LTD., 485 Lexington Avenue, New York, New York 10017, a New York corporation (hereinafter Robert Burton).

An action is currently pending among the parties hereto styled Adams Apple Distributing Company and Head Imports, Inc. v. Robert Burton Associates, Ltd., Civil Action No. 77 C 1486, in the Northern District of Illinois, Eastern Division (hereinafter the "lawsuit"). The parties agree to settle this litigation on the following terms and conditions:

1. Robert Burton agrees that henceforth all of Robert Burton's cigarette rolling paper packaging, advertising and promotional materials which contain the term "1-1/2 Size" will also include, in reasonable proximity thereto, a separate brand name, trademark, or logo, such for example as "E-Z wider" or "Joker" to the end that the name or brand name of Robert Burton's cigarette rolling paper shall not appear to be solely and only "1-1/2 Size". Notwithstanding the foregoing, to the extent that any of

Robert Burton's current packaging, advertising and pro-
motional materials contain the term "1-1/2 Size" standing
alone, Robert Burton may continue to sell its existing
inventory of such packaging, advertising and promotional
material during the next nine months.  In particular, Robert
Burton agrees that after the above-mentioned nine month
period expires, its current 24 booklet counter display box
for "1-1/2 Size" E-Z wider rolling papers will no longer
contain the term "1-1/2 Size" on one panel without the term
"E-Z wider" in reasonable proximity thereto.  Neither Head
nor Adams Apple shall at any time contest or object or
attempt to enjoin or interfere in any way with the use by
Robert Burton of the term "1-1/2 Size" as provided herein.

The term "packaging" as used herein and
elsewhere in this agreement includes individual booklet
packages for cigarette rolling paper and display cartons
containing a plurality of such booklets.

2.  Robert Burton agrees that henceforth all of
Robert Burton's cigarette rolling paper packaging, advertising
and promotional materials which contain the term "1-1/4
Size" will also include, in reasonable proximity thereto, a
brand name, trademark, or logo, such for example as "E-Z
wider" or "Joker" to the end that the name or brand name of
Robert Burton's cigarette rolling paper shall not appear to

be solely and only "1-1/4 Size". Notwithstanding the
foregoing, to the extent that any of Robert Burton's current
packaging, advertising and promotional materials contain the
term "1-1/4 Size" standing alone, Robert Burton may continue
to sell its existing inventory of such packaging, advertising
and promotional material during the next nine months.
Neither Head nor Adams Apple shall at any time contest or
object or attempt to enjoin or interfere in any way with the
use by Robert Burton of the term "1-1/4 Size" as provided
herein.

        3.  Subject to the provisions of Paragraphs 1 and
2 above, Robert Burton agrees that it will not make any
proprietary use of the designations "ONE POINT FIVE", "1 POINT
5", "ONE POINT TWO FIVE", "1 POINT 25", "ONE POINT FIVE size",
"1 POINT 5 size", "ONE POINT TWO FIVE size", "1 POINT 25 size"
"1.5", "1.25", "1.5 size" or "1.25 size" on any packaging,
advertising or promotional materials for its cigarette rolling
papers.

        4.  Robert Burton will not oppose any presently
pending applications by Adams Apple to register the trademarks
"ONE POINT FIVE", "1 POINT 5", "1.5" and/or "ONE POINT TWO FIVE"
"1 POINT 25", or "1.25" for cigarette rolling papers,
nor file any cancellation proceedings against such trademarks
if same are registered by any competent governmental authority
as the result of Adams Apple's presently pending applications.

5. Nothing contained in Paragraphs 1 through 4 above shall be construed to be or operate in derogation of or prejudicial to any rights, licenses or privileges which Robert Burton may now or at any time hereafter enjoy as a member of the public, and Robert Burton shall notwithstanding anything contained in such Paragraphs 1 through 4 hereof to the contrary, have the right to exercise any rights, licenses or privileges as a member of the public as fully as though this agreement were not in existence. In particular, and without limitation upon the generality of the foregoing, it is understood that:

(i) the limitations imposed upon Robert Burton in Paragraph 1 above shall cease to apply at such time as any third party shall market cigarette rolling papers in packages or with advertising or promotional material in which the term "1-1/2" or "1-1/2 Size" shall appear without a separate brand name, trademark or logo being in reasonable proximity thereto; provided that Robert Burton shall first have given notice to Adams Apple thereof and provided, further, that if

(a) such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b) within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use, and shall thereafter diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then and in such event, such limitations shall continue to apply.

(ii) the limitations imposed upon Robert Burton in Paragraph 2 above shall cease to apply at such time as any third party shall market cigarette rolling papers in packages or with advertising or promotional material in which the term "1-1/4" or "1-1/4 Size" shall appear without a separate brand name, trademark or logo being in reasonable proximity thereto; provided that Robert Burton shall first have given notice to Adams Apple thereof and provided, further, that if

-4-

(a)  such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b)  within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use, and shall thereafter diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then such limitations shall continue to apply.

(iii)  the limitations contained in Paragraph 3 above shall cease to apply with respect to any designation referred to in such paragraph at such time as any third party (other than a third party licensed by Adams Apple under a bona fide arm's length licensing agreement with respect to such designation) shall market cigarette rolling papers with advertising or promotional material or packaging in which such designation appears in any way whatsoever; provide that Robert Burton shall first have given notice to Adams Apple thereof and provided further that if

(a)  such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b)  within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use and shall diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then such limitation shall continue to apply with respect to such designation.

6.  Upon execution of this Agreement, Adams Apple, Head and Robert Burton shall stipulate to the dismissal of the above-mentioned case of Adams Apple Distributing Company and Head Imports, Inc. v. Robert Burton Associates, Ltd., Civil Action No. 77 C 1486, with prejudice, and without the assessment of any costs or damages to any party.

7.  Adams Apple and Head agree not to institute any suit or action at law or in equity against Robert Burton by reason of any claim relating to the facts alleged in Count IV of the
- · · ·· ·ified Complaint filed on September 7, 1977,

in the previously mentioned suit styled <u>Adams Apple Distributing</u>
<u>Company, et al.</u> v. <u>Robert Burton Associates, Ltd.</u>, Civil Action
No. 77 C 1486 in the Northern District of Illinois, Eastern
Division.

ADAMS APPLE DISTRIBUTING COMPANY

Date:_____    By:_____
                                      Donald R. Levin, President


HEAD IMPORTS, INC.

Date:_____    By:_____


ROBERT BURTON ASSOCIATES, LTD.

Date:_____    By:_____

# EXHIBIT D

imperial Tobacco Group PLC - About us - Group at a glance

About us   Investors   Media   Corporate responsibility   Careers   About tobacco

## About us

- **Group at a glance**
- Acquisitions

- Strategy
- Management
- Values
- Regions
- Brands
- Our view
- History
- Common questions
- Contact us

Search [        ]
[Go]

# Group at a glance

Imperial Tobacco is the world's fourth largest international tobacco company, which manufactures, markets and sells a comprehensive range of cigarettes, tobaccos, rolling papers, filter tubes and cigars. We also provide logistics and distribution services for tobacco and other products.

## Overview

Imperial Tobacco products are available in over 160 countries worldwide. Our geographic and product diversity provides business resilience and a strong platform for future growth.

## Brands

- Our key premium international cigarette brand Davidoff has a strong foothold in Asia and a growing presence in a number of markets worldwide.
- West is our biggest selling cigarette brand with its major markets in Germany and in Central and Eastern Europe.
- Complementing our cigarette portfolio we are world leaders in fine cut tobacco, cigars, papers and tubes with brands such as Golden Virginia, Drum, Cohiba, Montecristo and Rizla.

- Find out more about brands

## 2007 financial performance

_____

## Key global brands

Our key global brands of Davidoff, West, Gauloises Blondes, Drum, Golden Virginia and Rizla are complemented by a strong portfolio of regional and local brands such as Lambert & Butler, JPS, Fortuna, Gitanes, Horizon, Maxim, Excellence and Route 66.

## Manufacturing

Our 58 factories are focused on production quality, business simplification and optimising our cost base. We continue to increase productivity and reduce our unit costs.

## 31
Cigarette factories

## 24
Other tobacco product and processing factories

## 3

## Acquisitions

- Read about our acquisitions since 1997

## Key brands

- Davidoff
- West
- Rizla
- Drum
- Golden Virginia

Imperial Tobacco Group PLC - About us - Group at a glance

136.7p
Adjusted Earnings Per Share (pence)

69.5p
Dividend Per Share (pence)

£1,475m
Adjusted Profit from Operations (million)

Paper and tube factories

Home    Legal    Accessibility    Help    Site index    Search    Information policies    Contact us    Mobile

© 2008 Imperial Tobacco Group PLC

About us    Investors    Media    Corporate responsibility    Careers    About tobacco

# Contact us

## We have dedicated departments to handle the following queries



### Online help

We've answered the most commonly asked questions, so please read before contacting us.
▸ Common questions

### General enquiries

For general enquiries, to offer feedback about our site or to request a hard copy of our Annual Report.
▸ General enquiries

### Investors

For analysts, institutions and investors.
▸ Investor contacts

### Media

For journalists and news organisations.
▸ Media contacts

### Corporate responsibility

For corporate responsibility-related enquiries.
▸ Corporate responsibility contacts

### Careers

To find out more about working for us.
▸ Careers contacts

### International contacts A-Z

If you need contact details for one of our international locations, try:
▸ Offices worldwide

**About us**

- Group at a glance
- Strategy
- Management
- Values
- Regions
- Brands
- Our view
- History
- Common questions
- **Contact us**
  - International contacts A-Z

Search

Go

**Registered office**

Imperial Tobacco Group PLC
PO Box 244
Upton Road
Bristol BS99 7UJ
Tel: +44 (0)117 963 6636
© 2008 Imperial Tobacco Group PLC
Registered in England and Wales
No: 3236483

**Registrars**

Equiniti
Aspect House
Spencer Road
Lancing, West Sussex
BN99 6DA

Tel: 0871 384 2037
(0871 384 2255 text phone for shareholders with hearing difficulties)
Calls to these numbers will be charged at 8p per minute from a BT landline. Other telephone providers costs may vary.
(+44 (0) 121 415 7009 from outside the UK)

**ADR Depositary**

Shareholder Services for ADR holders

**Auditors**

PricewaterhouseCoopers LLP
Chartered Accountants and Registered Auditors
31 Great George Street
Bristol BS1 5QD

Home    Legal    Accessibility    Help    Site index    Search    Information policies    Contact us    Mobile

**Lawyers**

Ashurst
Broadwalk House
5 Appold Street
London EC2A 2HA

Allen & Overy
One Bishops Square
London E1 6AO

**Financial advisors**

Citigroup
Citigroup Centre
33 Canada Square
Canary Wharf
London E14 5LB

Citibank Shareholder Services
PO Box 43077,
Providence, RI 02940-3077,
USA

**Tel:** (toll-free number in USA)
1 877-CITI-ADR (877-248-4237)
**Email:** citibank@shareholders-online.com

## Stockbrokers

**Hoare Govett Limited**
250 Bishopsgate
London EC2M 4AA

**Tel:** +44 (0)20 7678 8000

**Morgan Stanley & Co. International Limited**
20 Cabot Square
Canary Wharf
London
E14 4QW

**Tel:** +44 (0)20 7425 8000

EXHIBIT E

About Commonwealth Brands Inc. Company History

# Commonwealth Brands, Inc.

- About Us
  - Company History
  - Manufacturing
  - 2008 Holiday Schedule
- Cigarette Brands
- RYO/MYO Brands
- Retailers
- Employment Opportunities
- Government/Regulatory
- Customer Service

## Company History

Commonwealth Brands, Inc. was formed in 1991 in Bowling Green, Kentucky, for the manufacture of tobacco products. In 1996, we acquired a cigarette manufacturing facility in Reidsville, North Carolina, and a group of cigarette brands divested by Brown & Williamson Tobacco Corp. in connection with its acquisition of American Tobacco Company.

In November 1998, various United States territories and 46 states entered into the Master Settlement Agreement (MSA) with the then four largest tobacco companies. We were the first tobacco products manufacturer that chose to join the Master Settlement Agreement with the states without having been sued by any state. We comply with the restrictions on marketing and advertising products contained in the Master Settlement Agreement, including the MSA's prohibition on marketing to youth smokers.

In 1999, we began marketing USA Gold, a brand we developed, nationally. First introduced on a limited basis in 1993, USA Gold has grown to be the eighth best selling brand in the United States and the third best selling discount brand in the United States.

Complementing USA Gold is another brand we developed called Sonoma.  Sonoma is the third best selling brand in the military and has achieved the 14th position domestically.

In July 2001, Commonwealth Brands Inc. was purchased by CBHC, Inc., a subsidiary of Houchens Industries, Inc. According to The ESOP Association, Houchens, an ESOP-owned subchapter S corporation, is the largest 100% ESOP-owned company in the United States.

In September 2005, Commonwealth Brands became the exclusive distributor of Bali Roll-Your-Own (RYO) and McClintock Make-Your-Own (MYO) products in the United States.  Bali and McClintock were manufactured by Peter Stokkebye Tobaksfabrik A/S in Denmark. On July 1, 2007, Commonwealth Brands purchased the brand rights to BaliShag and McClintock from Peter Stokkebye.

On April 1, 2007, Commonwealth Brands was acquired by Imperial Tobacco PLC (www.imperial-tobacco.com) headquartered in Bristol, United Kingdom. Imperial Tobacco is the 4th largest international tobacco company. It manufactures, markets and sells a comprehensive range of cigarettes, tobaccos, rolling papers, filter tubes and cigars in over 130 countries worldwide. It has around 15,000 employees and operates 32 manufacturing sites across the globe. Its shares are listed on the London and New York exchanges.

In May 2007, Commonwealth launched its first premium blend cigarette. Tuscany is sold nationally and is available in 8 box styles.

In September 2007, Robert Burton Associates, LTD (RBA LTD), an Imperial Tobacco company located in Newark New Jersey, was merged into Commonwealth Brands, Inc. As a result, Commonwealth Brands now sells all Premier Supermatic products, including rolling tobacco, rolling papers, various cigarette tubes and tube-filling machines.

Commonwealth Brands is presently the fourth largest cigarette manufacturer in the U. S.



SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.

About Commonwealth brands, Inc Company History

Search

# EXHIBIT F

Joker Papers

ABOUT US   PAPERS   GOOD TIMES   SMOKE SHOP   JESTER'S COURT   PROMOS   DOWNLOADS   VENDOR INFO   CONTACT US

# 1 1/4 PURE HEMP

For the purist – indulge yourself with our all-natural, pure hemp paper.

- Made from pure hemp fibers
- Popular 1 ¼ size
- Fewer residues from ash and practically no taste



## PAPERS

Made from the finest, natural French papers, Joker Papers offers a wide range of sizes and paper types to suit
your unique style.

ABOUT US    PAPERS    GOOD TIMES    SMOKE SHOP    JESTER'S COURT    PROMOS    DOWNLOADS    VENDOR INFO    CONTACT US

# 1 1/4

Get the skinny on our most popular 1 ¼ paper.

- Slightly narrower for more experienced rollers
- Medium weight
- Joker filigraine for quality assurance



## PAPERS

Made from the finest, natural French papers, Joker Papers offers a wide range of sizes and paper types to suit
your unique style.

Joker Papers

ABOUT US    PAPERS    GOOD TIMES    SMOKE SHOP    JESTER'S COURT    PROMOS    DOWNLOADS    VENDOR INFO    CONTACT US

# 1 1/2 PURE HEMP

For the purist – indulge yourself with our all-natural, pure hemp paper.

- Made from pure hemp fibers
- Popular 1 ½ size
- Clean burning with minimal ash

## PAPERS

Made from the finest, natural French papers, Joker Papers offers a wide range of sizes and paper types to suit
your unique style.



Joker Papers

# 1 1/2 LIGHTS

Light up with a lightweight.

- Middle width for less paper
- Lightweight
- Finest quality paper with minimal ash



# PAPERS

Made from the finest, natural French papers, Joker Papers offers a wide range of sizes and paper types to suit
your unique style.

Joker Papers

# 1 1/2

Kick back with our most popular pack.

- Middle width for less paper
- Medium weight
- Joker filigraine for quality assurance



## PAPERS

Made from the finest, natural French papers, Joker Papers offers a wide range of sizes and paper types to suit
your unique style.

e-z wider

# ULTRA LIGHTS 1 1/2

Light up with our lightest paper yet.

- The lightest weight paper we make
- Middle width for less paper
- Clean burning with minimal ash



© 2008 Commonwealth Brands, Inc. I Site Map

e-z wider

# LIGHTS 1 1/2

Light and easy.

- Light weight clean burning paper
- Medium width for less paper
- e-z wider filigraine for quality assurance



© 2008 Commonwealth Brands, Inc. I Site Map

e-z wider

# ORIGINAL 1 1/2

Not too thin, not too wide.

- Middle width for less paper
- Medium weight
- e-z wider filigraine for quality assurance



© 2008 Commonwealth Brands, Inc. I Site Map

e-z wider

# PURE HEMP 1 1/2

Weve expanded the family.

- Made from pure hemp fibers
- Popular 1 1/2 size
- Clean burning with minimal ash



© 2008 Commonwealth Brands, Inc. I Site Map

e-z wider

# PURE HEMP 1 1/4

Exceptional paper performance in a pure hemp paper.

- Made with pure, natural hemp fibers
- e-z wider filigraine for quality assurance
- Narrower paper for experienced rollers



© 2008 Commonwealth Brands, Inc. I Site Map

# ORIGINAL 1 1/4

A true American classic.

- Narrower paper for experienced rollers
- A medium paper
- e-z wider filigraine for quality assurance



© 2008 Commonwealth Brands, Inc. | Site Map

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REPUBLIC TOBACCO, L.P., an Illinois Limited Partnership, ) ) ) | |
| Plaintiff, ) ) | No. 08 CV 3267 |
| v. ) ) | |
| COMMONWEALTH BRANDS, INC., a Kentucky Corporation ) ) ) | Hon. Pallmeyer Magistrate Judge Ashman |
| Defendant. ) ) | |

## <u>DECLARATION OF SETH I. GOLD</u>

I, Seth I. Gold, having personal knowledge of the facts stated below and being competent to testify thereto, declare as follows:

1.      I am the current Executive Vice President and Senior Legal Officer of Republic Tobacco, L.P. ("Republic"), the plaintiff in this action.

2.      In 2001, Republic and Robert Burton Associates, Ltd. ("RBA) had occasion to reaffirm their understanding of the 1979 Settlement Agreement that settled the 1977 Litigation *Adams Apple Distributing Co. v. Robert Burton Associates, Ltd.*, No. 77 C 1486 (N.D. Ill), when a dispute arose regarding RBA's use of the decimal marks "1.5" and "1.25."

3.      Attached as Ex. H is a true and correct copy of a December 12, 2001 letter from me to RBA's President Russ Mancuso concerning Republic's trademarks in the "1.5" and "1.25" designations.

4.      Attached as Ex. I is a true and correct copy of a December 21, 2001 letter from me to Russ Mancuso concerning Republic's trademarks in the "1.5" and "1.25" designations and RBA's use of the designations.

5.    Attached as Ex. J is a true and correct copy of a December 27, 2001 letter from Russ Mancuso to me concerning Republic's trademarks in the "1.5" and "1.25" designations and RBA's use of the designations.

6.    Attached as Ex. K is a true and correct copy of a December 12, 2001 memorandum from Russ Mancuso to RBA Sales Personnel, which was attached to the December 27, 2001 letter from Russ Mancuso to me (Ex. J).

7.    Attached as Ex. L is a true and correct copy of a December 27, 2001 memorandum from Russ Mancuso to RBA Sales Personnel, which was attached to the December 27, 2001 letter from Russ Mancuso to me (Ex. J).

8.    In light of RBA's prompt remedial action in December 2001, Republic did not sue RBA in 2001 for its violation of the 1979 Agreement.

9.    Attached as Ex. M is a true and correct copy of a sales advertisement circulated by CBI at the National Association of Tobacco Outlets trade show in April 2008.

10.    Attached as Ex. N is a true and correct copy of April 29 to April 30, 2008 emails between Rob Wilkey, CBI's General Counsel, and me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of August, 2008.

Seth I. Gold

# EXHIBIT H



**Republic Tobacco**

2301 Ravine Way • Glenview, Illinois 60025
Phone: (847) 832-9700 • Fax: (847) 832-9710

*December 12, 2001*

<u>VIA COURIER</u>

*Mr. Russ Mancuso*
*President*
*RBA, Ltd.*
*100 Passaic Avenue*
*Fairfield, NJ 07004*

Re: <u>Trademark Matters</u>

Dear Mr. Mancuso:

Once again, congratulations on your replacing Carl Ioos as President of RBA. Thank you for taking time to hear our concerns about the use by some of RBA's salesmen of Republic's registered designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products not made by Republic. As we discussed and you acknowledged, Republic is the domestic distributor of JOB cigarette papers and is the owner and licensor of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products. Copies of these registrations are attached to this letter for future reference. We appreciate your volunteering to communicate with all of your salesmen regarding this issue.

I am glad that we will be able to cooperate in the spirit of clean and fair competition with respect for the law and the proprietary rights of our respective companies. I also appreciate your agreeing to execute a very simple consent and co-existence agreement which we have drafted for the use of the mark "TOP" by our supplier Top Tobacco, and the use of Tulsa Tops by RBA. Please let me know if you have any problems with the language in these very basic documents. If the documents are acceptable to you, please sign both agreements, retain one for your records and return an original to me.

Thanks again for your cooperation.

Very truly yours,

**REPUBLIC TOBACCO, L.P.**

By: _____

Seth T. Gold
Executive Vice President/Senior Legal Officer

Enclosures

RECEIVED
DEC 1 3 2001

Int. Cl.: 34

Prior U.S. Cl.: 8

## United States Patent and Trademark Office

Reg. No. 1,331,207
Registered Apr. 16, 1985

## TRADEMARK
### PRINCIPAL REGISTER



REPUBLIC TOBACCO INC. (ILLINOIS CORPO-
RATION)
5100 NORTH RAVENSWOOD
CHICAGO, IL 60640 , BY CHANGE OF NAME
FROM ADAMS APPLE DISTRIBUTING COM-
PANY (ILLINOIS CORPORATION) CHICA-
GO, IL 60640

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CL. 8).
FIRST USE 4-9-1976; IN COMMERCE
4-9-1976.
SEC. 2(F).

SER. NO. 358,876, FILED 4-8-1982.

ERIC WACHSPRESS, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cl.: 8

United States Patent and Trademark Office

Reg. No. 1,328,866
Registered Apr. 2, 1985

## TRADEMARK
### PRINCIPAL REGISTER



REPUBLIC TOBACCO, INC. (ILLINOIS CORPO-
RATION)
5100 N. RAVENSWOOD
CHICAGO, IL 60640

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CL. 8).

FIRST USE 5-20-1977; IN COMMERCE
5-20-1977.
SEC. 2 (f)
SER. NO. 358,902, FILED 4-8-1982.

ERIC WACHSPRESS, EXAMINING ATTORNEY

REGISTERED FOR A TERM OF 20 YEARS FROM    Apr. 2, 1985

COMB. AFF. SEC. 8 & 15

Attest

NOV 12 1992

Attesting Officer

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION
WHICH IS IN FULL FORCE AND EFFECT WITH NOTATION
OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DIS-
CLOSED BY THE RECORDS OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE. SAID RECORDS SHOW TITLE
TO BE IN: DRL Enterprises, Inc.,
corp. of Delaware

Acting Commissioner of Patents and

# EXHIBIT I



2301 Ravine Way • Glenview, Illinois 60025
Phone: (847) 832-9700 • Fax: (847) 832-9710

December 21, 2001

<u>VIA FAX AND COURIER</u>

Mr. Russ Mancuso
President
RBA, Ltd.
100 Possaic Avenue
Fairfield, NJ 07004

Re: <u>Trademark Matters</u>

Dear Mr. Mancuso:

As you recall on December 12, 2001, I talked to you about what we consider to be a very serious problem; namely, the use by RBA of Republic's registered designations ("1.5" and "1.25") in conjunction with cigarette papers and tobacco products distributed by RBA. At the time, you acknowledged that Republic is the owner of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products. You also agreed to make it clear to your salespeople that the use of the designations "1.5" and "1.25" in conjunction with RBA products must cease, that Republic owns "1.5" "1.25", and that RBA products are to be referred to as 1 ½ and 1 ¼. Attached to this fax (hard copy of which is being sent to you by courier) is a promotional piece sent by one of RBA's salesmen. The piece uses the designations "1.5" "1.25" to promote RBA products. We believe that you are intentionally confusing customers by appropriating the good will of our marks and attaching that good will to your products. If you do not immediately cease and desist from this conduct and immediately acknowledge to Republic at the address set forth above that Republic is the owner of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products, then we will be forced to seriously consider other options to try to have this conduct stopped.

I was hopeful after our conversation that the companies would be able to compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. The attached evidence throws into question the chances that the companies can transact business in quiet enjoyment of their respective rights. Actions speak louder than words.

We await your corrective action. Please respond within ten (10) business days.

Very truly yours,

REPUBLIC TOBACCO, L.P.

By: _____
Seth I. Gold

cc: Charles Bergen, Esq.

Page -2-

# EXHIBIT J



December 27, 2001

**VIA FAX AND FEDEX OVERNIGHT**

Mr. Don Levin
President
Republic Tobacco
2301 Ravine Way
Glenview, Illinois  60025

Re:   <u>Trademark Matters</u>

Dear Mr. Levin:

RBA has received the letter dated December 21, 2001 regarding Trademark Matters and has taken
the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not
being used by mistake in presentations by RBA salesmen.  A memo·(copy attached) was sent to all
RBA salesmen after our initial contact on December 12, 2001 informing them of this.  A second
memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic
is the owner of the "1.5" and "1.25" designations in conjunction with cigarette papers and tobacco
products and that RBA products utilize the 1 ½ and 1 ¼ size designations in the cigarette papers and
tobacco products category.

I am hopeful that my conversation with Seth Gold and this letter clearly indicates that RBA does
compete in a clean and fair manner with respect for the law and the proprietary rights of our
respective companies.  We hope that our two companies can continue to transact business in quiet
enjoyment in the market place.

Please contact me if you have any further questions.

Very truly yours,

Robert Burton Associates, Ltd.

*Russell G. Mancuso*

Russell G. Mancuso

RGM:lr
Enclosures:

   

*ROBERT BURTON ASSOCIATES, LTD.*    100 Passaic Avenue, Fairfield, NJ 07004   (973) 882-5500   Fax (973) 882-5544

# EXHIBIT K



TO:         All Sales Personnel

FROM:       Russ Mancuso

DATE:       December 12, 2001

SUBJECT:    Product Designations "1.5" & "1.25"

When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.

If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately.

If you have any questions regarding the trademark designations please contact me immediately.

   

**ROBERT BURTON ASSOCIATES, LTD.**   100 Passaic Avenue, Fairfield, NJ 07004   (973) 882-5500   Fax (973) 882-5544

# EXHIBIT L



**RBA**

TO:        All Sales Personnel

FROM:    Russ Mancuso

DATE:     December 27, 2001

SUBJECT:  Follow-up Instructions Product Designations "1.5" & "1.25"

---

As stated in my previous memo dated December 12, 2001, when preparing presentations or promotional materials do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered trademarks used by Republic Tobacco for the cigarette paper and tobacco categories. Our Joker and E-Z Wider products should have the 1 ½ and 1 ¼ designations signifying the brand sizes.

If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. Again, no one should use the "1.5" and "1.25" designations in any presentations for the cigarette paper and tobacco categories expect Republic Tobacco who owns the registered designations.

If you have any questions regarding the trademark designations please contact me immediately.






ROBERT BURTON ASSOCIATES, LTD.   100 Passaic Avenue, Fairfield, NJ 07004   (973) 882-5500   Fax (973) 882-5544

# EXHIBIT M



## Pre-Stocked Counter Display # 02094
## <u>BUY 4 GET 2 FREE</u>

Regular List Price:
$131.70

Promotional Price
33% off: $87.80



<u>Display Contains:</u>

48 ea Regular Orange

24 ea Single Wide Double

24 ea 1.25

48 ea 1.50

**Case Pack is 12 Displays per case**

Qty ordered _____

| ORDER FORM | |
|---|---|
| **Account:** | |
| **Address:** | |
| **City:** | |
| **Signature:** | |

Acct #



# EXHIBIT N

# REDACTED

**From:** Wilkey, Rob [mailto:Rob.Wilkey@us.imptob.com]
**Sent:** Wednesday, April 30, 2008 12:55 PM
**To:** SIGold@drl-ent.com
**Subject:** RE:

Seth;
   I have spoken with Russ and he assures me he had no knowledge of this document.  At any rate, as I stated in my earlier email, we have corrected the situation by withdrawing the sheet and asking that folks not use the numerical descriptor.  I trust this is satisfactory.  Kind regards,  Rob

---

**From:** Seth Gold [mailto:SIGold@drl-ent.com]
**Sent:** Wednesday, April 30, 2008 9:24 AM
**To:** Wilkey, Rob
**Subject:** RE:

**Rob: Our information regarding the promotion is much different. We are told by someone who was there that the deal sheet was presented at a national trade show at your booth where Russ Mancuso was present. RBA and CBI are wrong about the position regarding our marks as you know and as your company has agreed twice in writing. If you don't promptly change your position to conform to your agreements we will have to have this matter settled the hard way.**

---

**From:** Wilkey, Rob [mailto:Rob.Wilkey@us.imptob.com]
**Sent:** Wednesday, April 30, 2008 9:04 AM
**To:** SIGold@drl-ent.com
**Subject:** RE:

Seth;
   We have tracked down the offending party.  It was simply a sales person in the field that developed the piece for purposes of taking orders.  His use of the numerical designations was simply descriptive.  As you know, RBA, and now CBI has taken the position that the numerals in question can be used descriptively, however, we agree to refrain from the use of these numbers at this time and assure you that the use in this instance was not intentional.  If you have questions about this please *do not* hesitate to let me know.  I hope that you and yours are well.  Kind regards,  Rob

---

**From:** Seth Gold [mailto:SIGold@drl-ent.com]
**Sent:** Tuesday, April 29, 2008 1:02 PM
**To:** Wilkey, Rob
**Subject:**

**Rob: It is one thing for your company to contest our marks when it agreed thirty years ago not to use the marks and, before the challenge, lived up to that agreement. It is another thing to go and infringe in your promotional materials.
I don't understand why your company is pursuing this course, but we cannot let this behavior continue.**

---

Imperial Tobacco Limited and Group Companies

www.imperial-tobacco.com

This email is confidential and may contain information that is privileged and exempt from disclosure by law. If you have received it in error, please contact the sender immediately by return email and then delete it from your system; you should not copy it or disclose its

contents to anyone. Imperial Tobacco Limited and Group Companies reserve the right to monitor all email communications through their networks. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, lost or destroyed, or contain viruses. Anyone who communicates with us by email is taken to accept these risks.

Imperial Tobacco Limited and Group Companies

*www.imperial-tobacco.com*

This email is confidential and may contain information that is privileged and exempt from disclosure by law. If you have received it in error, please contact the sender immediately by return email and then delete it from your system; you should not copy it or disclose its contents to anyone. Imperial Tobacco Limited and Group Companies reserve the right to monitor all email communications through their networks. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, lost or destroyed, or contain viruses. Anyone who communicates with us by email is taken to accept these risks.