**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REPUBLIC TOBACCO, L.P., an Illinois Limited Partnership, | ) |
| | ) Case No. 08 CV 3267 |
| Plaintiff | ) |
| | ) Honorable Rebecca R. Pallmeyer |
| v. | ) |
| | ) Magistrate Judge Martin C. Ashman |
| COMMONWEALTH BRANDS, INC., a Kentucky Corporation, | ) |
| | ) |
| Defendants | ) |

**FIRST AMENDED COMPLAINT TO ENFORCE PRIOR**
**SETTLEMENT AGREEMENT AND FOR OTHER RELIEF**

**PARTIES**

1.　　Plaintiff Republic Tobacco, L.P. ("Republic Tobacco") is an Illinois limited partnership that distributes roll-your-own cigarette papers, tobacco and other tobacco-related products, including those sold under the TOP, JOB and other leading brand names.  Republic Tobacco has its principal place of business at 2301 Ravine Way, Glenview, Illinois.  In 1983, Republic Tobacco became successor-in-interest to Adams Apple Distributing Co., as the importer and distributor of JOB cigarette papers, including its "1.5" and "1.25" cigarette papers.

　　　　a.　　The general partner of Republic Tobacco, L.P. is Republic Tobacco Management Corp., an Illinois Subchapter "S" corporation, which is owned in its entirety by the Donald R. Levin Revocable trust, of which Donald R. Levin is sole trustee. Mr. Levin is an Illinois resident.

　　　　b.　　The sole limited partner of Republic Tobacco, L.P. is DRL Enterprises, Inc.  DRL Enterprises, Inc. is a Delaware Subchapter "S" corporation, which is owned by the Donald R. Levin Revocable Trust, of which Donald R. Levin, an Illinois resident, is

the sole trustee, and by the Levin DRL Enterprises Trust, of which Alan M. Berry, an Illinois resident, is the sole trustee.

2.      Defendant Commonwealth Brands, Inc. ("CBI") is, on information and belief, a Kentucky corporation with its headquarters at 900 Church Street, Bowling Green, Kentucky. CBI is the wholly-owned subsidiary of Imperial Tobacco Group plc, ("Imperial"). According to its website, Imperial "is the world's fourth largest international tobacco company, which manufactures, markets and sells a comprehensive range of cigarettes, tobaccos, rolling papers and tubes." Previously, in 1997, Imperial had bought Robert Burton Associates, Ltd. ("RBA"), the U.S. distributor of "JOKER" and "E-Z Wider" brand cigarette papers. In April 2007 Imperial completed its acquisition of CBI, which at the time was the fourth largest cigarette manufacturer in the United States. Following the acquisition, Imperial made CBI the successor-in-interest to RBA, and CBI took over RBA's right to import and distribute "JOKER" and "E-Z Wider" brand roll-your-own cigarette paper.

3.      This Complaint is filed to enforce an earlier agreement dated November 2, 1979 (the "1979 Settlement Agreement"), in which the parties agreed to certain terms in return for which Republic agreed to stipulate to the dismissal of its pending case against RBA, CBI's predecessor-in-interest. A copy of the 1979 Settlement Agreement is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction under 28 U.S.C. § 1332, as this dispute arises between citizens of different states. This Court also has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b), as it involves violation of and a request for relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

6.      For over 30 years, Republic Tobacco and its predecessor, Adams Apple Distributing Co. (collectively hereinafter "Republic") have had the exclusive right to distribute JOB cigarette papers in the United States.  Over that period of time, Republic has used the decimal designations "1.5" and "1.25" to identify two of its best-selling and well-known types of JOB cigarette papers.

7.      In 1977, Republic filed an action against RBA, CBI's predecessor-in-interest, captioned *Adams Apple Distributing Co. v. Robert Burton Associates, Ltd.*, No. 77 C 1486 (N.D. Ill.) (the "1977 Litigation").  The 1977 Litigation sought, *inter alia*, injunctive relief to halt RBA's unlawful infringement of Republic's common-law "One-and-a-half" and "1-1/2" marks and to prevent consumer confusion.  During the litigation, RBA took the position that the "One-and-a-half" or "1-1/2" designations were merely "descriptive," and were not exclusively identified with cigarette papers sold by Republic.

8.      The parties settled the 1977 Litigation in 1979.  They agreed that so long as the fractional designations "1-1/2 size" or "1-1/4 size" were used in "reasonable proximity" to one of RBA's brand names, trademarks or logos, such use would be acceptable.  Thus, the 1979 Settlement Agreement provides:

> Robert Burton agrees that henceforth all of Robert Burton's cigarette rolling paper packaging, advertising and promotional materials which contain the term "1-1/2 Size" will also include, in reasonable proximity thereto, a separate brand name, trademark, or logo, such for example as "E-Z Wider" or "Joker" to the end that the name or brand name of Robert Burton's cigarette rolling paper shall not appear to be solely and only "1-1/2 Size."

A similar provision governs the use of "1-1/4 size."  (Ex. A, ¶¶ 1, 2.)

9.      In return, RBA agreed that the "1.5" and "1.25" marks used by Republic belonged

solely to Republic.  Thus, the 1979 Settlement Agreement provides that:

> [RBA] agrees that it will not make any proprietary use of the
> designations "ONE POINT FIVE," "1 POINT 5," "ONE POINT
> TWO FIVE," "1 POINT 25," "ONE POINT FIVE size," "1
> POINT 5 size," "ONE POINT TWO FIVE size," "1 POINT 25
> size "1.5," "1.25," "1.5 size" or "1.25 size" on any packaging,
> advertising or promotional materials for its cigarette rolling papers.

(1979 Settlement Agreement, Ex. A, ¶ 3.)

10.     Furthermore, RBA agreed that it would not oppose:

> . . . any presently pending applications by Adams Apple to register
> the trademarks "ONE POINT FIVE," "1 POINT 5," "1.5" and/or
> "ONE POINT TWO FIVE" "1 POINT 25," OR "1.25" for
> cigarette rolling papers, nor file any cancellation proceedings
> against such trademarks if same are registered by any competent
> governmental authority as the result of Adams Apple's presently
> pending applications.

(Id. ¶ 4.)

11.     On this basis, the parties stipulated to dismissal of the action "with prejudice and

without the assessment of any costs or damages to any party," and agreed to refrain from any

further litigation of the issues.

12.     Over the next 29 years, in reliance upon the 1979 Settlement Agreement,

Republic extensively promoted and developed its line of "1.5," "1.25" and, beginning in 1985,

"1.0" cigarette papers.  Through hard work, the investment of time and money and through the

marketing of a unique paper, used exclusively in the market with decimal designations, the "1.5"

and "1.25" brands grew over the next thirty years to be among the top brands sold in the United

States.

13.     In 2001, RBA and Republic had occasion to reaffirm and expand their

understanding of the 1979 Settlement Agreement.  In a December 12, 2001 letter, Republic

wrote to RBA regarding "our concerns about the use by some of RBA's salesmen of Republic's registered designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products not made by Republic."  Ex. B.  A follow-up letter, dated December 21, 2001 records that RBA's president, Russ Mancuso, verbally "acknowledged that Republic is the owner of the designations '1.5' and '1.25' in conjunction with cigarette papers and tobacco products [and] also agreed to make it clear to [RBA's] sales people that the use of the designations '1.5' and '1.25' in conjunction with RBA products must cease . . ."  (Ex. C.)

14.    RBA followed through on its commitment and sent two memoranda to its sales force regarding "Product Designations '1.5' and '1.25'" and "Follow-up Instructions Product Designations '1.5' and '1.25.'"  (Exs. D and E.)

15.    In a memorandum distributed to all RBA sales personnel on December 12, 2001, RBA's president wrote:

> SUBJECT:  Product Designations "1.5" & "1.25"
>
> When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.
>
> If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately.
>
> If you have any questions regarding the trademark designations please contact me immediately.

(Ex. D).

16.    In a second memorandum sent to all sales personnel on December 27, 2001, RBA reinforced the message:

> SUBJECT:  Follow-up Instructions Product Designations "1.5" & "1.25"
>
> As stated in my previous memo dated December 12, 2001, when preparing presentations or promotional materials do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered trademarks used by

Republic Tobacco for the cigarette paper and tobacco categories. Our Joker and E-Z Wider products should have the 1½ and 1¼ designations signifying the brand sizes.

If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. Again, no one should use the "1.5" and "1.25" designations in any presentations for the cigarette paper and tobacco categories except Republic Tobacco who owns the registered designations.

If you have any questions regarding the trademark designations please contact me immediately.

(Ex. E.)

17.    Having issued these unequivocal instructions to his sales force, RBA's president wrote to Republic on December 27, 2001. The December 27, 2001 letter states in its entirety:

Mr. Don Levin
President
Republic Tobacco
2301 Ravine Way
Glenview, Illinois 60025

Re:   Trademark Matters

Dear Mr. Levin:

RBA has received the letter dated December 21, 2001 regarding Trademark Matters and has taken the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen. A memo (copy attached) was sent to all RBA salesmen after our initial contact on December 12, 2001 informing them of this. A second memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and "1.25" designations in conjunction with the cigarette papers and tobacco products and that RBA products utilize the 1½ and 1¼ size designations in the cigarette papers and tobacco products category.

I am hopeful that my conversation with Seth Gold and this letter clearly indicates that RBA does compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. We hope that our two companies can continue to transact business in quiet enjoyment in the market place.

Please contact me if you have any further questions.

Very truly yours,

6

**Robert Burton Associates, Ltd.**

Russell G. Mancuso

(Ex. F.)

18.    In reliance on RBA's prompt remedial action, Republic did not sue RBA in 2001 for violation of the 1979 Settlement Agreement and infringement of its "1.5" and "1.25 marks.

19.    In 2007, CBI succeeded to RBA's rights to import and distribute JOKER and E-Z Wider cigarette papers.  Later, at a November 2007 meeting between CBI's owner, Imperial Tobacco, and Republic, Imperial sought to buy out Republic.  Republic's current owner refused to sell, and the unlawful acts complained of herein followed.

20.    Following the unsuccessful attempt to buy Republic, Imperial's subsidiary, CBI violated the 1979 Settlement Agreement and the 2001 Letter Agreements.  CBI chose to infringe upon Republic's well-established "1.5" and "1.25" marks and to engage in unfair competition and deceptive trade practices.

21.    At the National Association of Tobacco Outlets trade show in April 2008, CBI circulated a sales advertisement that violates the 1979 Settlement Agreement and the 2001 Letter Agreements.  A copy of CBI's advertisement is attached as Exhibit G.  The advertisement infringes Republic's well-established "1.5" and "1.25" marks and constitutes unfair competition. It purports to offer a counter display of "1.50" and "1.25" JOKER Papers.   According to the advertisement:

JOKER PAPERS

\*      \*      \*

Display Contains:

| | |
|---|---|
| 48 ea | Regular Orange |
| 24 ea | Single Wide Double |
| 24 ea | 1.25 |

48 ea          1.50

Case Pack is 12 Display per case.

(Ex. G).

22.     CBI does not deny that it circulated the advertisement at the trade show, but claims that "RBA, and now CBI has taken the position that the [marks, "1.5" and "1.25"] can be used descriptively." (Ex. H.) At the same time, CBI seeks to avoid formal resolution of this question, seeking to palliate Republic by stating "we agree to refrain from the use of these numbers at this time and assure you that the use in this instance was not intentional" (emphasis added.) Republic strongly disagrees with CBI's attempt to both claim the right to use Republic's marks, while disclaiming its intent to do so "in this instance." Republic brings this action to obtain, *inter alia*, a declaration of its rights versus CBI with respect to the use of marks "1.5" and "1.25" in connection with the marketing and sale of cigarette paper.

## COUNT I

### Breach Of The 1979 Settlement Agreement

23.     Republic has fulfilled all of its responsibilities under the 1979 Settlement Agreement.

24.     CBI has violated the 1979 Settlement Agreement between its predecessor-in-interest, RBA, and Republic.

25.     An actual controversy exists as to the scope of the parties' rights under the 1979 Settlement Agreement and Republic seeks a declaration that pursuant to the 1979 Settlement Agreement, as implemented through the parties' course of conduct and course of performance, CBI may not make use of Republic's well-established "1.5" and "1.25" marks for cigarette papers. Republic also seeks damages for any harm arising out of CBI's breach of the 1979 Settlement Agreement.

8

26.     CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause, irreparable injury and damages an amount in excess of $75,000, exclusive of interest and costs to Republic's business, reputation, good will, product sales, and image.  Republic has no adequate remedy at law.

## COUNT II

### Promissory Estoppel

27.     Republic realleges and incorporates by reference the allegations of Paragraphs 1-26 of this Complaint as if set forth fully herein.

28.     In 2001, CBI's predecessor, RBA, reaffirmed its commitment not to use the designations "1.5" or "1.25" in connection with its own Joker and E-Z Wider cigarette paper products "as these are registered by Republic Tobacco for the cigarette paper and tobacco categories."  (Ex. D.)

29.     RBA instructed its own sales personnel to "cease and desist immediately" any use of those designations "in any presentations for cigarette paper and tobacco categories except Republic Tobacco who owns the registered designations."  (Ex. E.)

30.     To forestall litigation, RBA advised Republic that it "has taken the appropriate actions to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen," and that, "A second memo . . . is being sent to RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and "1.25" designations . . ."  (Ex. F.)

31.     Republic reasonably relied upon these representations.  CBI has now renounced its obligation to honor these promises.  Republic seeks a judgment declaring its rights and

estopping CBI from reneging on the promises made by its predecessor in interest, RBA, and awarding Republic its damages for any harm it has suffered due to CBI's breach.

32.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damages to Republic's business, reputation, good will, product sales, and image.  Republic has no adequate remedy at law.

## COUNT III

### Lanham Act 15 U.S.C. § 1125(a)(1)(A) False Designation Of Origin And Federal Trademark Infringement

33.    Republic realleges and incorporates by reference the allegations of Paragraphs 1-32 of this Complaint as if set forth fully herein.

34.    CBI's use of "1.5" and 1.25" in connection with the JOKER brand of cigarette papers is without permission or authority of Republic, and is likely to cause confusion, to cause mistake and/or to deceive.

35.    CBI's use of "1.5" and "1.25" in connection with the JOKER brand of cigarette papers has been made not withstanding Republic's prior rights in the marks "1.5" and "1.25" papers.

36.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with the JOKER brand of cigarette papers is in violation of Republic's common law rights in the "1.5" and "1.25" marks.

37.    CBI is infringing Republic's rights to the "1.5" and "1.25" marks in interstate commerce by various acts, including, without limitation, the advertising, offering for sale, sale, and distribution of JOKER cigarette papers under the confusingly similar designations "1.5" and "1.25."

38.    CBI's use of the designations "1.5" and "1.25" in connection with JOKER brand of cigarette papers constitutes false designation of origin, false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Republic with CBI and as to the origin, sponsorship, or approval of CBI's products and commercial activities by Republic.

39.    CBI's past and continuing use of the marks "1.5" and "1.25" in connection with JOKER cigarette papers has caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damages to Republic's business, reputation, good will, product sales, and image.  Republic has no adequate remedy at law.

40.    Pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, Republic seeks injunctive relief restraining CBI from using the designations "1.5" and "1.25" in connection with the offering, sale, distribution, advertising, and marketing of any cigarette papers other than those distributed by Republic.

41.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Republic seeks to recover any profits CBI may have received and any damages Republic may have incurred as a result of CBI's unlawful conduct, as well as Republic's litigation costs.

42.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1118, Republic seeks an order requiring CBI to deliver for destruction all advertisements, labels, packages, and other materials bearing or reproducing the marks "1.5" or "1.25"

## COUNT IV

### Unfair Competition And Trademark Infringement

43.     Republic realleges and incorporates by reference the allegations of Paragraphs 1-42 of this Complaint as if set forth fully herein.

44.     Through continuous use of the marks "1.5" and "1.25" in advertising, offering for sale, distribution, marketing, and labeling of cigarette rolling papers, Republic and its predecessors have acquired common law rights to use the marks "1.5" and "1.25 for such products.

45.     CBI's use of the designations "1.5" and "1.25" are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of CBI with Republic, or as to the origin, sponsorship, or approval of CBI's products and commercial activities by Republic such that CBI's acts constitute infringement of Republic's protectable proprietary rights in its mark, misappropriation of Republic's goodwill, and unfair competition under Illinois law, entitling Republic to relief, including, but not limited to, injunctive relief and damages.

### JURY DEMAND

46.     Pursuant to Fed. R. Civ. P. 38(b), Republic respectfully demands a trial by jury of all issues triable by a jury in this case.

### PRAYER FOR RELIEF

Wherefore, plaintiff Republic Tobacco, L.P. ("Republic"), prays as follows:

That, after due proceedings be had, there be judgment in Republic's favor on its Complaint against defendant Commonwealth Brands, Inc. and that a judgment be entered against CBI as follows:

1)    declaring CBI in breach of the 1979 Settlement Agreement, specifically enforcing the 1979 Settlement Agreement and awarding Republic any damages it may have suffered arising from the breach of the 1979 Settlement Agreement and its costs;

2)    estopping CBI from reneging on the promises made in its predecessor's December 2001 correspondence with Republic, acknowledging and undertaking to respect and safeguard from further infringement Republic's rights in the "1.5" and "1.25" marks;

3)    enjoining CBI from further violations of § 43(a) of the Lanham Act;

4)    requiring CBI to disgorge any and all profits received;

5)    awarding damages to compensate Republic for harm it has suffered as a result of CBI's unlawful conduct;

6)    requiring CBI to deliver for destruction all advertisements, labels, packages, and other materials bearing or reproducing the marks "1.5" and/or "1.25";

7)    fully declaring Republic's rights in its "1.5" and "1.25" marks as against CBI; and

8)    awarding Republic its attorneys' fees, costs, and any such additional relief to which Republic may be entitled in law or in equity.

Dated: August 12, 2008                    Respectfully submitted,

                                          REPUBLIC TOBACCO, L.P.

                                          By:    /s/ Charles S. Bergen
                                                 One of Its Attorneys

Charles S. Bergen
Peter S. Roeser
Pei Y. Chung
**GRIPPO & ELDEN LLC**
111 South Wacker Drive
Chicago, Illinois 60606
Phone:        (312) 704-7700
Facsimile:    (312) 558-1195

## CERTIFICATE OF SERVICE

I, Charles S. Bergen, counsel for Plaintiff Republic Tobacco, L.P. hereby certify that on August 12, 2008, a copy of the foregoing **FIRST AMENDED COMPLAINT TO ENFORCE PRIOR SETTLEMENT AGREEMENT AND FOR OTHER RELIEF** was served by Electronic Mail Transmission via ECF as to Filing Users upon each of the following counsel of record:

> Michael P. Padden
> Howrey LLP
> 321 North Clark Street
> Suite 3400
> Chicago, Illinois 60654
> Tel. (312) 595-1149
> Fax: (312) 595-2250
>
> Robert E. Scully, Jr.
> Brewster B. Taylor
> Emily Harwood Smith
> Stites & Harbsion PLLC
> 1199 N. Fairfax Street
> Suite 900
> Alexandria, Virginia 22314
> Tel. (703) 739-4900
> Fax: (703) 739-9577

> /s/ Charles S. Bergen
> Charles S. Bergen

# EXHIBIT A

LI
08CV3267
JUDGE    PALLMEYER
MAGISTRATE   JUDGE ASHMAN

<u>AGREEMENT</u>

This Agreement, made this 2nd day of November, 1979 between ADAMS APPLE DISTRIBUTING COMPANY, 5100 North Ravenswood, Chicago, Illinois 60640, an Illinois corporation (hereinafter Adams Apple), HEAD IMPORTS, INC., Box 3019, Aspen, Colorado 81611, a Colorado corporation (hereinafter Head), and ROBERT BURTON ASSOCIATES, LTD., 485 Lexington Avenue, New York, New York 10017, a New York corporation (hereinafter Robert Burton).

An action is currently pending among the parties hereto styled <u>Adams Apple Distributing Company and Head Imports, Inc.</u> v. <u>Robert Burton Associates, Ltd.</u>, Civil Action No. 77 C 1486, in the Northern District of Illinois, Eastern Division (hereinafter the "lawsuit"). The parties agree to settle this litigation on the following terms and conditions:

1. Robert Burton agrees that henceforth all of Robert Burton's cigarette rolling paper packaging, advertising and promotional materials which contain the term "1-1/2 Size" will also include, in reasonable proximity thereto, a separate brand name, trademark, or logo, such for example as "E-Z wider" or "Joker" to the end that the name or brand name of Robert Burton's cigarette rolling paper shall not appear to be solely and only "1-1/2 Size". Notwithstanding the foregoing, to the extent that any of

Robert Burton's current packaging, advertising and pro-
motional materials contain the term "1-1/2 Size" standing
alone, Robert Burton may continue to sell its existing
inventory of such packaging, advertising and promotional
material during the next nine months.  In particular, Robert
Burton agrees that after the above-mentioned nine month
period expires, its current 24 booklet counter display box
for "1-1/2 Size" E-Z wider rolling papers will no longer
contain the term "1-1/2 Size" on one panel without the term
"E-Z wider" in reasonable proximity thereto.  Neither Head
nor Adams Apple shall at any time contest or object or
attempt to enjoin or interfere in any way with the use by
Robert Burton of the term "1-1/2 Size" as provided herein.

   The term "packaging" as used herein and
elsewhere in this agreement includes individual booklet
packages for cigarette rolling paper and display cartons
containing a plurality of such booklets.

   2.  Robert Burton agrees that henceforth all of
Robert Burton's cigarette rolling paper packaging, advertising
and promotional materials which contain the term "1-1/4
Size" will also include, in reasonable proximity thereto, a
brand name, trademark, or logo, such for example as "E-Z
wider" or "Joker" to the end that the name or brand name of
Robert Burton's cigarette rolling paper shall not appear to

be solely and only "1-1/4 Size". Notwithstanding the
foregoing, to the extent that any of Robert Burton's current
packaging, advertising and promotional materials contain the
term "1-1/4 Size" standing alone, Robert Burton may continue
to sell its existing inventory of such packaging, advertising
and promotional material during the next nine months.
Neither Head nor Adams Apple shall at any time contest or
object or attempt to enjoin or interfere in any way with the
use by Robert Burton of the term "1-1/4 Size" as provided
herein.

      3.  Subject to the provisions of Paragraphs 1 and
2 above, Robert Burton agrees that it will not make any
proprietary use of the designations "ONE POINT FIVE", "1 POINT
5", "ONE POINT TWO FIVE", "1 POINT 25", "ONE POINT FIVE size",
"1 POINT 5 size", "ONE POINT TWO FIVE size", "1 POINT 25 size"
"1.5", "1.25", "1.5 size" or "1.25 size" on any packaging,
advertising or promotional materials for its cigarette rolling
papers.

      4.  Robert Burton will not oppose any presently
pending applications by Adams Apple to register the trademarks
"ONE POINT FIVE", "1 POINT 5", "1.5" and/or "ONE POINT TWO FIVE"
"1 POINT 25", or "1.25" for cigarette rolling papers,
nor file any cancellation proceedings against such trademarks
if same are registered by any competent governmental authority
as the result of Adams Apple's presently pending applications.

5.  Nothing contained in Paragraphs 1 through 4 above shall be construed to be or operate in derogation of or prejudicial to any rights, licenses or privileges which Robert Burton may now or at any time hereafter enjoy as a member of the public, and Robert Burton shall notwithstanding anything contained in such Paragraphs 1 through 4 hereof to the contrary, have the right to exercise any rights, licenses or privileges as a member of the public as fully as though this agreement were not in existence.  In particular, and without limitation upon the generality of the foregoing, it is understood that:

(i)  the limitations imposed upon Robert Burton in Paragraph 1 above shall cease to apply at such time as any third party shall market cigarette rolling papers in packages or with advertising or promotional material in which the term "1-1/2" or "1-1/2 Size" shall appear without a separate brand name, trademark or logo being in reasonable proximity thereto; provided that Robert Burton shall first have given notice to Adams Apple thereof and provided, further, that if

(a)  such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b)  within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use, and shall thereafter diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then and in such event, such limitations shall continue to apply.

(ii)  the limitations imposed upon Robert Burton in Paragraph 2 above shall cease to apply at such time as any third party shall market cigarette rolling papers in packages or with advertising or promotional material in which the term "1-1/4" or "1-1/4 Size" shall appear without a separate brand name, trademark or logo being in reasonable proximity thereto; provided that Robert Burton shall first have given notice to Adams Apple thereof and provided, further, that if

-4-

(a)   such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b)  within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use, and shall there-after diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then such limitations shall continue to apply.

(iii)  the limitations contained in Paragraph 3 above shall cease to apply with respect to any designation referred to in such paragraph at such time as any third party (other than a third party licensed by Adams Apple under a bona fide arm's length licensing agreement with respect to such designation) shall market cigarette rolling papers with advertising or promotional material or packaging in which such designation appears in any way whatsoever; provide that Robert Burton shall first have given notice to Adams Apple thereof and provided further that if

(a)   such use shall have permanently ceased within 90 days after such notice from Robert Burton as the result of a demand upon such third party by Adams Apple to permanently cease such use, or

(b)  within 90 days after such notice from Robert Burton, Adams Apple shall commence legal proceedings to enjoin such use and shall diligently prosecute such legal proceedings until a permanent injunction is issued with respect thereto, then such limitation shall continue to apply with respect to such designation.

6.  Upon execution of this Agreement, Adams Apple, Head and Robert Burton shall stipulate to the dismissal of the above-mentioned case of Adams Apple Distributing Company and Head Imports, Inc. v. Robert Burton Associates, Ltd., Civil Action No. 77 C 1486, with prejudice, and without the assessment of any costs or damages to any party.

7.  Adams Apple and Head agree not to institute any suit or action at law or in equity against Robert Burton by reason of any claim relating to the facts alleged in Count IV of the _____ _____ Complaint filed on September 7, 1977,

in the previously mentioned suit styled <u>Adams Apple Distributing</u>
<u>Company, et al.</u> v. <u>Robert Burton Associates, Ltd.</u>, Civil Action
No. 77 C 1486 in the Northern District of Illinois, Eastern
Division.

ADAMS APPLE DISTRIBUTING COMPANY

Date: _____   By: _____
                                     Donald R. Levin, President

HEAD IMPORTS, INC.

Date: _____   By: _____

ROBERT BURTON ASSOCIATES, LTD.

Date: _____   By: _____

# EXHIBIT B



**Republic Tobacco**™

2301 Ravine Way • Glenview, Illinois 60025
Phone: (847) 832-9700 • Fax: (847) 832-9710

December 12, 2001

<u>VIA COURIER</u>

Mr. Russ Mancuso
President
RBA, Ltd.
100 Passaic Avenue
Fairfield, NJ 07004

Re: <u>Trademark Matters</u>

Dear Mr. Mancuso:

      Once again, congratulations on your replacing Carl Ioos as President of RBA. Thank you for taking time to hear our concerns about the use by some of RBA's salesmen of Republic's registered designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products not made by Republic. As we discussed and you acknowledged, Republic is the domestic distributor of JOB cigarette papers and is the owner and licensor of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products. Copies of these registrations are attached to this letter for future reference. We appreciate your volunteering to communicate with all of your salesmen regarding this issue.

      I am glad that we will be able to cooperate in the spirit of clean and fair competition with respect for the law and the proprietary rights of our respective companies. I also appreciate your agreeing to execute a very simple consent and co-existence agreement which we have drafted for the use of the mark "TOP" by our supplier Top Tobacco, and the use of Tulsa Tops by RBA. Please let me know if you have any problems with the language in these very basic documents. If the documents are acceptable to you, please sign both agreements, retain one for your records and return an original to me.

      Thanks again for your cooperation.

Very truly yours,

**REPUBLIC TOBACCO, L.P.**

By: _____
      Seth T. Gold
      Executive Vice President/Senior Legal Officer

RECEIVED
DEC 13 2001

Enclosures

Int. Cl.: 34

Prior U.S. Cl.: 8

Reg. No. 1,331,207

# United States Patent and Trademark Office
Registered Apr. 16, 1985

## TRADEMARK
### PRINCIPAL REGISTER



REPUBLIC TOBACCO INC. (ILLINOIS CORPO-
RATION)
5100 NORTH RAVENSWOOD
CHICAGO, IL 60640 , BY CHANGE OF NAME
FROM ADAMS APPLE DISTRIBUTING COM-
PANY (ILLINOIS CORPORATION) CHICA-
GO, IL 60640

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CL. 8).
FIRST USE 4-9-1976; IN COMMERCE
4-9-1976.
SEC. 2(F).

SER. NO. 358,876, FILED 4-8-1982.

ERIC WACHSPRESS, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cl.: 8

United States Patent and Trademark Office

Reg. No. 1,328,866
Registered Apr. 2, 1985

## TRADEMARK
## PRINCIPAL REGISTER



REPUBLIC TOBACCO, INC. (ILLINOIS CORPO-
RATION)
5100 N. RAVENSWOOD
CHICAGO, IL 60640

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CL. 8).

FIRST USE 5-20-1977; IN COMMERCE
5-20-1977.

SEC. 2 (f)

SER. NO. 358,902, FILED 4-8-1982.

ERIC WACHSPRESS, EXAMINING ATTORNEY

REGISTERED FOR A TERM OF 20 YEARS FROM    Apr. 2, 1985

COMB. AFF. SEC. 8 & 15

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION
WHICH IS IN FULL FORCE AND EFFECT WITH NOTATION
OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DIS-
CLOSED BY THE RECORDS OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE. SAID RECORDS SHOW TITLE
TO BE IN: DRL Enterprises, Inc.,
corp. of Delaware

Attest

NOV 12 1992

Attesting Officer

Acting Commissioner of Patents and

# EXHIBIT C



**Republic Tobacco** ™

2301 Ravine Way • Glenview, Illinois 60025
Phone. (847) 832-9700 • Fax: (847) 832-9710

December 21, 2001

<u>VIA FAX AND COURIER</u>

Mr. Russ Mancuso
President
RBA, Ltd.
100 Possaic Avenue
Fairfield, NJ 07004

Re: <u>Trademark Matters</u>

Dear Mr. Mancuso:

As you recall on December 12, 2001, I talked to you about what we consider to be a very serious problem; namely, the use by RBA of Republic's registered designations ("1.5" and "1.25") in conjunction with cigarette papers and tobacco products distributed by RBA. At the time, you acknowledged that Republic is the owner of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products. You also agreed to make it clear to your salespeople that the use of the designations "1.5" and "1.25" in conjunction with RBA products must cease, that Republic owns "1.5" "1.25", and that RBA products are to be referred to as 1 ½ and 1 ¼. Attached to this fax (hard copy of which is being sent to you by courier) is a promotional piece sent by one of RBA's salesmen. The piece uses the designations "1.5" "1.25" to promote RBA products. We believe that you are intentionally confusing customers by appropriating the good will of our marks and attaching that good will to your products. If you do not immediately cease and desist from this conduct and immediately acknowledge to Republic at the address set forth above that Republic is the owner of the designations "1.5" and "1.25" in conjunction with cigarette papers and tobacco products, then we will be forced to seriously consider other options to try to have this conduct stopped.

I was hopeful after our conversation that the companies would be able to compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies. The attached evidence throws into question the chances that the companies can transact business in quiet enjoyment of their respective rights. Actions speak louder than words.

We await your corrective action. Please respond within ten (10) business days.

Very truly yours,

**REPUBLIC TOBACCO, L.P.**

By: _____
Seth I. Gold

cc: Charles Bergen, Esq.

Page -2-

# EXHIBIT D



TO:         All Sales Personnel

FROM:       Russ Mancuso

DATE:       December 12, 2001

SUBJECT:    Product Designations "1.5" & "1.25"

When preparing presentations or promotional materials please do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered by Republic Tobacco for the cigarette paper and tobacco categories.

If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately.

If you have any questions regarding the trademark designations please contact me immediately.

      

ROBERT BURTON ASSOCIATES, LTD.   100 Passaic Avenue, Fairfield, NJ 07004   (973) 882-5500   Fax (973) 882-5544

# EXHIBIT E



TO:        All Sales Personnel

FROM:      Russ Mancuso

DATE:      December 27, 2001

SUBJECT:   Follow-up Instructions Product Designations "1.5" & "1.25"

---

As stated in my previous memo dated December 12, 2001, when preparing presentations or promotional materials do not use the "1.5" and "1.25" designations for our Joker and E-Z Wider cigarette paper products as these are registered trademarks used by Republic Tobacco for the cigarette paper and tobacco categories. Our Joker and E-Z Wider products should have the 1 ½ and 1 ¼ designations signifying the brand sizes.

If you mistakenly used the "1.5" and "1.25" designations in previous presentations cease and desist immediately. Again, no one should use the "1.5" and "1.25" designations in any presentations for the cigarette paper and tobacco categories expect Republic Tobacco who owns the registered designations.

If you have any questions regarding the trademark designations please contact me immediately.

      

**ROBERT BURTON ASSOCIATES, LTD.**   100 Passaic Avenue, Fairfield, NJ 07004   (973) 882-5500   Fax (973) 882-5544

# EXHIBIT F



December 27, 2001

<u>**VIA FAX AND FEDEX OVERNIGHT**</u>

Mr. Don Levin
President
Republic Tobacco
2301 Ravine Way
Glenview, Illinois  60025

              Re:    **<u>Trademark Matters</u>**

Dear Mr. Levin:

RBA has received the letter dated December 21, 2001 regarding Trademark Matters and has taken the appropriate action to insure that Republic's registered designations "1.5" and "1.25" are not being used by mistake in presentations by RBA salesmen.  A memo (copy attached) was sent to all RBA salesmen after our initial contact on December 12, 2001 informing them of this.  A second memo (copy attached) is being sent to the RBA salesmen today, again notifying them that Republic is the owner of the "1.5" and "1.25" designations in conjunction with cigarette papers and tobacco products and that RBA products utilize the 1 ½ and 1 ¼ size designations in the cigarette papers and tobacco products category.

I am hopeful that my conversation with Seth Gold and this letter clearly indicates that RBA does compete in a clean and fair manner with respect for the law and the proprietary rights of our respective companies.  We hope that our two companies can continue to transact business in quiet enjoyment in the market place.

Please contact me if you have any further questions.

Very truly yours,

**Robert Burton Associates, Ltd.**

Russell G. Mancuso

RGM:lr
Enclosures:

   

ROBERT BURTON ASSOCIATES, LTD.    100 Passaic Avenue, Fairfield, NJ 07004    (973) 882-5500    Fax (973) 882-5544

# EXHIBIT G



## Pre-Stocked Counter Display # 02094
## <u>BUY 4 GET 2 FREE</u>

Regular List Price:
$131.70

Promotional Price
33% off: $87.80

<u>Display Contains:</u>

48 ea Regular Orange

24 ea Single Wide Double

24 ea 1.25

48 ea 1.50

**Case Pack is 12 Displays per case**



Qty ordered _____

| ORDER FORM | |
|---|---|
| **Account:** | |
| **Address:** | |
| **City:** | |
| **Signature:** | |

| Acct # | |
|---|---|

# EXHIBIT H

# REDACTED

**From:** Wilkey, Rob [mailto:Rob.Wilkey@us.imptob.com]
**Sent:** Wednesday, April 30, 2008 12:55 PM
**To:** SIGold@drl-ent.com
**Subject:** RE:

Seth;
   I have spoken with Russ and he assures me he had no knowledge of this document.  At any rate, as I stated in my earlier email, we have corrected the situation by withdrawing the sheet and asking that folks not use the numerical descriptor.  I trust this is satisfactory.  Kind regards,  Rob

---

**From:** Seth Gold [mailto:SIGold@drl-ent.com]
**Sent:** Wednesday, April 30, 2008 9:24 AM
**To:** Wilkey, Rob
**Subject:** RE:

**Rob: Our information regarding the promotion is much different. We are told by someone who was there that the deal sheet was presented at a national trade show at your booth where Russ Mancuso was present. RBA and CBI are wrong about the position regarding our marks as you know and as your company has agreed twice in writing. If you don't promptly change your position to conform to your agreements we will have to have this matter settled the hard way.**

---

**From:** Wilkey, Rob [mailto:Rob.Wilkey@us.imptob.com]
**Sent:** Wednesday, April 30, 2008 9:04 AM
**To:** SIGold@drl-ent.com
**Subject:** RE:

Seth;
   We have tracked down the offending party.  It was simply a sales person in the field that developed the piece for purposes of taking orders.  His use of the numerical designations was simply descriptive.  As you know, RBA, and now CBI has taken the position that the numerals in question can be used descriptively, however, we agree to refrain from the use of these numbers at this time and assure you that the use in this instance was not intentional.  If you have questions about this please do not hesitate to let me know.  I hope that you and yours are well.  Kind regards,  Rob

---

**From:** Seth Gold [mailto:SIGold@drl-ent.com]
**Sent:** Tuesday, April 29, 2008 1:02 PM
**To:** Wilkey, Rob
**Subject:**

**Rob: It is one thing for your company to contest our marks when it agreed thirty years ago not to use the marks and, before the challenge, lived up to that agreement. It is another thing to go and infringe in your promotional materials.**
**I don't understand why your company is pursuing this course, but we cannot let this behavior continue.**

---

Imperial Tobacco Limited and Group Companies

www.imperial-tobacco.com

This email is confidential and may contain information that is privileged and exempt from disclosure by law. If you have received it in error, please contact the sender immediately by return email and then delete it from your system; you should not copy it or disclose its

contents to anyone. Imperial Tobacco Limited and Group Companies reserve the right to monitor all email communications through their networks. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, lost or destroyed, or contain viruses. Anyone who communicates with us by email is taken to accept these risks.

Imperial Tobacco Limited and Group Companies

www.imperial-tobacco.com

This email is confidential and may contain information that is privileged and exempt from disclosure by law. If you have received it in error, please contact the sender immediately by return email and then delete it from your system; you should not copy it or disclose its contents to anyone. Imperial Tobacco Limited and Group Companies reserve the right to monitor all email communications through their networks. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, lost or destroyed, or contain viruses. Anyone who communicates with us by email is taken to accept these risks.